## Gorges *v.* Greater Adelphi Building and Loan Association, Appellant.

Argued April 29, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Emanuel Moss,* of *Moss & Moss,* for appellant.

*Frank A. Simons,* with him *Bender & Rubin,* for appellee.

*Sylvan H. Hirsch,* Special Deputy Attorney General, with him *Herbert P. Sundheim,* Special Deputy Attorney General, and *Charles J. Margiotti,* Attorney General, for Secretary of Banking, Amicus Curiæ.

OPINION BY MR. JUSTICE DREW, June 26, 1936:

Early in 1932, plaintiff, a shareholder, gave notice to the Adelphi Building and Loan Association of his intention to withdraw his shares. The notice of withdrawal was duly recorded on the association's books at a meeting in February of that year. Approximately one year later the association entered into an agreement of merger with the Co-Operative Building and Loan Association, as a result of which the Greater Adelphi Build-

ing and Loan Association, the present defendant, was formed. The merger agreement went into effect, over plaintiff's dissent, on February 27, 1933. The present suit was begun in the Municipal Court of Philadelphia County on June 4, 1934, to recover the valuation placed upon plaintiff's shares under the terms of the merger agreement. The case was tried by the court without a jury and the learned trial judge found that plaintiff was entitled to recover as a withdrawing shareholder. On appeal, the Superior Court ruled that plaintiff had failed to establish the elements necessary to the successful prosecution of his claim as a withdrawing shareholder, but held that the judgment in his favor might nevertheless be affirmed upon the theory that he was a dissenting shareholder: 120 Pa. Superior Ct. 322. To reach that result it was necessary to hold that plaintiff's claim as a dissenting shareholder was not barred by the Act of May 15, 1933, P. L. 794.* The proper construction of an

---

* That act is as follows: "An act limiting the period within which nonassenting or dissenting shareholders of building and loan associations, which have merged and consolidated, or which shall merge and consolidate, prior to the third day of July, one thousand nine hundred thirty-three, may enforce their rights.

"Section 1. Be it enacted, etc., that where a building and loan association has, or shall become, a party to an agreement of merger and consolidation prior to the third day of July, one thousand nine hundred thirty-three, any shareholder of such association, who has voted against, or who has not voted for or against, such merger and consolidation at the meeting of shareholders at which the merger and consolidation was adopted, shall be forever barred from exercising any rights which he shall have as a nonassenting or as a dissenting shareholder, whether at law or in equity, unless he shall commence, or shall have commenced, proceedings, at law or in equity, to enforce such rights either within six months after the effective date of this act, or within six months after the date upon which the merger and consolidation has, or shall become, effective.

"Section 2. This act shall not be construed (1) to lengthen the period within which a shareholder who has objected to, and voted against, a merger and consolidation may, under section five of the act, approved the third day of May, one thousand nine hundred nine (Pamphlet Laws, four hundred eight), entitled 'An act au-

important act of assembly is involved.    We therefore allowed the present appeal.

The Superior Court held that the limitation prescribed by section 1 of the act was applicable only to the dissenting shareholder's action against the original association of which he was a member, and not to an action to enforce any rights which he might have against the new association.   In the opinion of the Superior Court the two sections of the act were irreconcilably conflicting.   If section 1 were to be construed to affect the dissenter's rights against the new association, how could it possibly be reconciled with section 2, which provided that the act should not be construed to affect "any right which a shareholder of either or any of the merging or consolidating associations, who has voted against . . . the merger and consolidation may have in the building and loan association resulting from the merger and consolidation"?   The Superior Court felt constrained, therefore, in an attempt to reconcile the two sections, to hold that the first section applied only to the dissenter's rights against the constitutent association of which he had been a member.   In our opinion, this construction, admittedly forced, was unnecessary.

Section 1 of the act bars a nonassenting or dissenting shareholder's suit *against* the new association at the expiration of the period fixed therein, and section 2 provides, in the event that such a suit has not been brought, that the dissenter thus barred shall enjoy all the legal

---

thorizing the merger and consolidation of certain corporations,' petition the court of common pleas to appoint appraisers to estimate and appraise the damages, if any, done to him by the merger and consolidation, nor (2) to affect any right which a shareholder of either or any of the merging or consolidating associations, who has voted against, or who has not voted for or against, the merger and consolidation may have in the building and loan association resulting from the merger and consolidation.

"Section 3.   This act shall be effective immediately upon its ap-approval by the Governor."

rights of a shareholder *in* the new association. To say that section 1 was meant to apply to the original association of which the dissenter was a member is to nullify the statute and to impute to the legislature a vain thing. Upon completion of the merger the constitutent associations ceased to exist. How could there possibly be any actions to bar? The Superior Court was not unaware of the dilemma provoked by its construction. That court failed to realize, however, that the reservation of rights *in* the consolidated association (section 2) does not conflict with the limitation of suits by nonassenting or dissenting shareholders *against* it (section 1). Section 2 was inserted out of an abundance of caution. If the act were a strict statute of limitation, the assertion of it as a bar to the dissenter's claim would not only defeat his right to maintain his suit as a nonassenting shareholder, but it would also carry the manifestly unjust consequence of a complete loss of his equity. Section 2 provided for the reservation of the dissenter's rights *in* the new association upon the expiration of his rights *against* it.

We have no doubt that our construction of the statute is in strict accordance with the intention of the legislature. It had just passed the Building and Loan Code of May 5, 1933, P. L. 457, to take effect July 3, 1933. Under the code dissenting shareholders were compelled to make demand upon the surviving or new association for the payment of the fair value of their shares as of the day prior to the date on which the vote was taken approving the merger, within twenty days after the merger was effected. It was further provided that "any shareholder failing to file such written objection or to make demand within the twenty-day period shall be conclusively presumed to have consented to the merger or consolidation, and shall be bound by the terms thereof." The code expressly provided that it should have no retroactive effect. No provision was made, therefore, with respect to nonassenters and dissenters in the case of a

merger that had already taken place or that might take place in the short interval prior to July 3, 1933. On the other hand this court had held, in *Nice Ball Bearing Co. v. Mortgage Building & Loan Association*, 310 Pa. 560, that a nonassenting or dissenting shareholder might sue for the merger value of his stock at any time within six years after the merger. The seriousness of the situation was apparent. Mergers and consolidations were rampant among building and loan associations, due to the stringent economic conditions and the depressed condition of the real estate market. If the rights of the many consenting shareholders in the various building and loan associations which had merged or which might merge prior to July 3, 1933, were to be preserved, it was evident that the long potential period of uncertainty should be removed. To compel dissenters from mergers that had been and might be effected prior to July 3, 1933, to make known their position, the present act, retrospective in its operation, was passed. As a result of the passage of this act building and loan associations, within a comparatively short time, could know and make provision for their liabilities to dissenting and nonassenting shareholders. Such shareholders were forced to decide whether they would pursue their rights as dissenters or go along as shareholders in the new association. Dissenters and nonassenters were not to be permitted to sit by and await the outcome of the merger, and, if it was favorable, become shareholders by acquiescence, but, if it was unfavorable, institute actions as dissenting or nonassenting shareholders for the merger value of their shares. Any such result would place an unjust premium on hindsight, and could not but fail to prejudice the association and its members who had consented to the merger.

It is contended by plaintiff that a dissenter is being unlawfully forced to become a shareholder in a new association against his will. The answer must be that he is

first given full opportunity to assert his rights as a non-assenting shareholder, and he is certainly not prejudiced by the fact that he is given rights *in* the new association upon the expiration of his rights *against* it. In other words, after the running of the statutory period, there is a conclusive presumption that he has retracted his dissent and that he is willing to be bound by the merger agreement.

Little need be said in reply to the argument that the statute offends section 7 of article III of the Constitution, prohibiting local or special legislation providing or changing methods for the collection of debts. Obviously the act is not a local or special law. Nor does it violate section 21 of article III, forbidding the enactment of any law prescribing any limitation of time within which suits may be brought against corporations different from the limitations fixed by general laws regulating actions against natural persons. The purpose of this section is clear. It forbids "limitations of time, in suits against corporations, . . . different from those which govern suits of private persons": *In re Grape Street,* 103 Pa. 121, at page 123. How could the act possibly apply to natural persons, who cannot be building and loan associations and who cannot merge or consolidate? Manifestly there is no discrimination.

The present suit was not brought until over a year after the effective date of the act and over fifteen months after the consummation of the merger. It was, therefore, not brought "within six months after the effective date of this act, or within six months after the date upon which the merger and consolidation has, or shall become, effective." If plaintiff's action is to be regarded as the suit of a dissenting shareholder, it is clear, from what has already been said, that the act was an effective bar. The discussion to be found in the opinion of the Superior Court is conclusive against his recovery as a withdrawing shareholder.

The judgment of the Superior Court, affirming the judgment of the Municipal Court of Philadelphia County, is reversed, and judgment is herein entered for defendant.

