### HAACKE v LEASE

Ohio Appeals, 2nd Dist, Clarke Co

No 423. Decided June 27, 1941

Herman O. Abele, Springfield, for appellee.

Anderson, McKee & Schwer, Springfield, and Spitler & Flynn, Tiffin, for appellant.

## OPINION

By GEIGER, PJ.

This is an appeal from the judgment of the Court of Common Pleas of Clark County, Ohio, based upon special verdict rendered in an action wherein the plaintiff sought to recover from the defendant for injuries received, due to the fact that the automobile driven by the defendant left the highway and overturned, resulting in injuries to the plaintiff. The verdict was for $2,000.00.

This action involves the provisions and correct interpretation of a portion of §6308-6 GC, commonly known as the "guest statute". The statute provides that the owner shall not be liable for loss arising from injuries to a guest unless such injuries "are caused by the wilful or wanton misconduct of * * * such owner or person responsible for the operation of the motor vehicles."

Plaintiff in his amended petition alleges that the defendant on the 27th day of August, 1938, was the owner of a motor vehicle, and that the plaintiff was at that time his passenger; that the defendant was operating said motor vehicle in Miami County, and that while plaintiff was so riding "the defendant wilfully and wantonly, negligently drove said motor vehicle so as to cause said motor vehicle to leave the highway and said wilful and wanton negligent acts of defendant in the operation of said motor vehicle, were, to-wit:

1. Defendant, while driving said motor vehicle, for a distance of approximately one-fourth of a mile, was looking completely away from the highway, the defendant was looking behind him—

self and to his right; the defendant's attention being attracted to farm buildings behind him to his right.

2. Defendant failed to stop said motor vehicle, or to slacken its speed, when not watching where he was driving.

3. Defendant knowing his conduct would injure the plaintiff, persisted and continued in his act of not, for a distance of approximately one-fourth of a mile, looking where he was driving said motor vehicle.

It is alleged that as a direct result of the wilful and wan negligence the vehicle left the highway and turned over and by reason thereof the plaintiff was thrown from the vehicle and injured in the respects set forth, requiring the expenditure of certain sums for hospital and medical expenses, and resulting in certain permanent injuries for which he asks damages in the sum of $20,000.00, and further states that he was damaged in the sum of $10,000.00, for pain and suffering. He asks judgment in the sum of $30,927.23.

To this petition an answer was filed admitting certain facts and denying other allegations.

It will be observed that the petition alleges that the defendant "wilfully and wantonly, negligently drove said motor vehicle", and that said wilful, wanton, negligent acts were as detailed, and that as a direct result of the "wilful and wanton negligence" of the defendant the damage occurred.

The statute says that unless such injuries or death are caused by wilful or wanton misconduct of said operation, seeming to make a distinction between negligence and misconduct. The latter must be present before a recovery may be had against the operator of the vehicle by his guest.

Trial was had and a special verdict returned, in which the jury returned findings as established from the evidence. Six findings of facts were submitted to the jury—only the fifth and sixth are of importance.

The fifth finding of facts was in substance—has it been proven that the defendant at the time of the accident or immediately prior thereto, was looking away from the highway and not where he was driving, and further, "that such operation of his automobile at the time, and immediately prior thereto, was wanton misconduct by the defendant in the operation of his said automobile".

The answer to this finding was "Yes".

The sixth finding was to the effect—has it been proven that the defendant at the time of the accident, or immediately prior thereto, was not watching where he was driving and at the same time failed to stop his motor vehicle or to slacken his speed; that such operation of his automobile "was wanton misconduct by the defendant in the operation of his automobile." The answer to this was "Yes".

The Court in addition to the special verdict submitted by plaintiff, submitted substantially the same questions in the form of a special verdict.

The defendant at the conclusion of the plaintiff's testimony and again at the conclusion of all of the testimony asked for a directed verdict and further moved the Court for judgment non obstanti, and for judgment upon the special verdict.

Motion for new trial was also filed, alleging seventeen different grounds upon which the defendant claimed manifest error.

The Court overruled all these motions and rendered judgment and notice of appeal was properly filed.

The defendants filed eleven assignments of error which may be epitomized to the effect that the Court erred in overruling the various motions; that the Court erred in refusing to incorporate in the special verdict and submit to the jury all the questions submitted by the defendant; that the verdict is contrary to the evidence and the law.

The Court stated to the jury that when requested by either party the Court is required to direct the jury to give a special verdict upon all the issues which the case presents, and that the verdict of the jury would not be the general verdict but will be a spe-

cial verdict for a finding upon the issues.

The Court charged in connection with the "guest statute"—

"In connection with that Statute you are instructed that wanton misconduct rests upon an indifference to consequences. By wanton misconduct is meant an act of one who, without having the intent to injure, is conscious, or should be conscious, from his knowledge of existing circumstances and conditions, that his conduct will naturally, and probably, result in injury to another; an entire absence of care for the safety of others, which exhibits indifference to consequences, establishes legal wantonness."

During the consideration of the case the jury sent a communication to the Court inquiring "What constitutes wanton misconduct?", and the statement that the jury desires to be further informed.

Thereupon the Court repeated the charge on this point as theretofore given in the general charge, and after doing so stated—"That is the definition of wanton misconduct which I gave you in the charge, do you want it repeated again? To which an affirmative answer is given and the charge again repeated.

This charge was presented to the jury in identical form on three separate occasions, first—in the general charge, second and third—when the jury asked for further instructions.

There is not a great deal of conflict of evidence.

Generally it may be stated that the evidence tended to prove that the plaintiff and his brother and the defendant were employes of a printing company located at Tipp City, and that they all had worked until 5:00 o'clock in the evening; after their work had been completed the defendant invited plaintiff and his brother to take a ride to Troy, and to return within an hour to Tipp City.

The car was driven out Route 71, and then turned on to Route 202, the speed being approximately 35 miles per hour. When they came to a lane leading to the Conservancy Farm the car went off the left side of the road. It was a one seated 1935 Ford, driven with the top down; the three were on the same seat—the plaintiff in the middle, the defendant on the left and his brother on the right; the highway was straight—16 feet wide, paved with tarvia, with a gravel berm; the day was clear and the road dry, with no cars in the vicinity; the rate of speed was between 40 and 45 miles an hour.

When about two city blocks from the lane leading to the Conservancy Farm, plaintiff's attention was attracted to the farm buildings on his right and looked in that direction. The marks on the tarvia indicated that at the end of the Conservancy drive where it intersected the highway, the car went into a ditch on the west or left side of the road and overturned; two of the front tires were flat after the car came to a rest upside down, about 10 feet from the highway.

It is claimed by the plaintiff that the cause of the automobile turning over was that the defendant was not looking at the road for two city blocks, the defendant looking behind himself and to his right at a certain farm building located on the Conservancy Farm.

It might be well to examine the provisions of §11420-14 GC, defining special verdict, and §§11420-16, 11420-17.

The first two sections have to do with the special verdict, and the third with a general verdict, but each involves the function of the jury in finding upon particular questions of fact.

The first four questions of fact submitted to the jury are not under criticism and need not be considered.

The fifth and sixth questions are criticized by appellant for the reason as claimed by him, that they embody not only a finding of facts but a conclusion of law.

The paragraphs in each question as objected to are identical, preceded by the inquiry as to whether it has been proved "that such operation of his automobile at the time and immediately

prior thereto, was wanton misconduct by the defendant in the operation of his said automobile at that time and place."

It is urged by the appellant that these statements, both of which were affirmatively answered are but conclusions of fact, or of combined fact and conclusions of law, and not proper facts to be found by the jury.

**Steel Co. v Lanakis, 93 Oh St 300,** comments upon this statute, the decision being per curiam, and it is stated in reference to the interrogatory under the question that it "does not call for a special finding upon a particular question of fact as contemplated by such statutory provisions, but rather for a combined finding of fact and conclusion of law, which conclusion may or may not be drawn from findings of particular facts returned by the jury and therefore should not have been submitted by the trial court."

The case of **Mason Tire & Rubber Co., 108 Oh St 377,** holds that—

"Under §11463 GC, the interrogatories are limited to the 'particular questions of fact'."

"An interrogatory sought to be submitted under that section, requesting the jury to find as to 'reasonable warning', reasonable signals, or reasonable care, and the like, calls for conclusions of fact, or conclusions of mixed fact and law, and is not authorized by that statute."

The case of **Penna Railroad Co. v Vitti, 111 Oh St 670,**—this case is not instructive. but should be listed among those making reference to this section.

**Noseda v Delmul, 123 Oh St 647,** holds that—

"When a special verdict contains certain conclusions of law, but in addition states essential facts from which the court may properly draw a conclusion as to legal liability, it is not reversible error for the court to disregard the conclusions of law in the special verdict and to enter the verdict justified by the findings of fact."

The opinion is by Allen, J., and is pertinent to the question before us, and is of importance in the case at bar.

**Dowd-Feder Co. v Schreyer, 124 Oh St 504,** relates to the same questions and Mathias, J., states, on p. 515—

"Nor are conclusions of law proper in a special verdict, and they must be disregarded just as are evidentiary matters."

"A finding that one party was negligent and the other was not would be a mere conclusion of law, and that clearly is not within the province of the jury to determine in a special verdict."

We are of the opinion that the statements in paragraphs five and six are but conclusions of fact or of fact and law, and were not properly submitted to the jury. The affirmative answer by the jury has no force in establishing the conclusion that the defendant was so guilty. That is a question of law exclusively within the province of the court.

However, we are not of the opinion that the inclusion of this improper matter in each of these questions and their answer by the jury in any way invalidates the finding of the jury on matters properly submitted to it, by virtue of the statute.

### THE EVIDENCE.

We will briefly sketch such portions of the evidence which are pertinent to the issue.

Bernard Lease, the defendant, called by the plaintiff for cross-examination, in answer to a query as to what caused the car to turn over stated he was looking back at some farm buildings, going abut 40 to 45 miles; he was two city blocks from the buildings when he started looking at them; he does not know for sure whether he glanced back at the road or not.

"Q. And from your experience in driving a car didn't you know it was a

dangerous situation to drive a car that speed for that distance without looking at the road?

A. I didn't think about it at the time.

Q. Weren't you conscious of the fact that continuing in that act would in all probability result in injury?

A. Yes.

Q. And yet you did nothing about it, to discontinue looking at the farm buildings?

A. No."

Upon being examined in chief he stated that the accident occurred in front of the driveway leading into the Conservancy Farm. His attention was attracted by the farm buildings. They were very unusual. The buildings were 600 or 700 yards back from the road. The road was dry, level and with no curves. The first he knew of the accident occurring was when they went off the road. He does not recall that he made any effort to straighten out the car. He sought to explain his affirmative answer that he was conscious of the fact that continuing in the act would in all probability result in injury. He stated that he understood the question then answered to mean whether he now knew that it was dangerous.

"Q. Were you aware or conscious at that time of the fact that when you took your eyes off the road and looked at those buildings an accident was liable to happen?

A. No."

He does not recall whether he did look back at the road at any time.

"Q. Were you conscious of the fact that you yourself were in any danger until the automobile started to leave the road?

A. No."

On cross-examination he stated that he did not recall making any effort to straighten up the car after it left the roadway.

Mr. Byron Oaks, a farmer residing in the vicinity of the accident testified as to the character of the buildings which had attracted the attention of Lease and stated that the road upon which the automobile was traveling was intersected by a lane leading from those buildings. He testified that when he arrived on the scene, the car was lying on the west side of the road upside-down, about 8 feet from the road; that the two front tires were down and that there were four black marks "right from the end of the drive to the car". The marks indicated that the tires started turning tarvia right at the end of the driveway going to the west side. The marks started on the highway. On cross-examination he stated that it was not possible for the skid marks to have been made by some other car. He stated positively that the marks were made by the car in question.

Robert Haacke, plaintiff, stated, in substance, on the point at issue—he went driving with the defendant, who asked him to go for a ride. It was a warm afternoon. They drove out Route 202 for approximately two miles and past the conservancy farm about a quarter of a mile to the place of the accident. "The car just went off the road and did not know what the de-unconscious. He did not notice anything unusual before the car left the road and did not know what the defendant was doing. He himself was not watching the road but was in conversation with his brother, the three being in the front seat, he sitting between the defendant and his brother.

"Q. What was the first thing you noticed that anything was wrong?

A. Hitting the ditch after the car went off the road."

The ditch was just a shallow incline. He held no conversation with the defendant while on Route 202 and did nothing that distracted the defendant's attention from the road. He did not look at the conservancy buildings and did not know whether the defendant was looking at them. On cross-examination, he stated that he and his

brother were looking at the conservancy buildings which were 500 feet back from the road on a hill in plain view with no obstructions between the road and the buildings. There was a lane running from Route 202 east at right angles, to the Conservancy Farm. The road where the accident occurred was straight and level, about 18 feet in width with a tarvia surface; the day was dry and clear, no other cars coming at the time of the accident. There was nothing to obstruct the view. The top of the car was down at the time of the accident. The last recollection he had was when the car started to go off the road.

The foregoing presents the picture of the circumstances preceding the accident. It may be summarized to the effect that the three young men on a summer afternoon, for the purpose of taking a pleasure drive, left their place of employment in a single seated car with the top down. As they were driving northward on a straight, level and improved highway the attention of the driver was attracted to certain buildings about 500 feet away from the highway. The evidence is not clear as to whether his attention was so diverted that he could not properly drive his car. The car was not being driven at a high or dangerous rate of speed and there was no complaint from the other occupants as to anything that indicated reckless driving. When the car reached the point of intersection of the lane leading to the conservancy buildings, it suddenly turned to the left leaving well defined skid marks across the road over the berm and onto a decline where it turned over. When first examined it was discovered that the two front tires were flat and possibly one of the rear. No witness directly testifies as to the sudden turning of the car across the highway. From this rather meager evidence, we are to determine whether or not it has been shown that the driver was guilty of "wanton misconduct".

There is no allegation in the petition that the injuries were caused by the "wilful misconduct" of the defendant, nor is there any allegation that they were caused by "wanton misconduct", the allegation being that they were caused by the "wanton negligent acts".

It is a matter of common knowledge that a person driving a car on a highway frequently looks to either side, the field of vision being broad enough to include objects on either side of the highway as well as a safe view of the highway itself. The allegation of the petition is that for approximately one-fourth of a mile the defendant was looking completely away from the highway "the defendant looking behind himself and to the right".

There have been many cases in Ohio involving the question of "wanton misconduct", both in relation to the "guest statute" and other actions.

We shall briefly note the cases in chronological order.

**Higbee Co. v Jackson, 101 Oh St 75,** syllabus 3—

"To constitute wanton negligence it is not necessary that there should be ill will toward the person injured, but an entire absence of care for the safety of others, which exhibits indifference to circumstances, establishes legal wantonness. Such a mental attitude distinguishes wrongs caused by wanton negligence from torts arising from mere negligence."

**Payne, Director v Vance, 103 Oh St 59,** holds that wilful tort involves an element of malice or ill will, but it is not necessary to show actual malice or ill will. It may be shown by indifference to the safety of others **after knowledge of their danger,** or failure, **after such knowledge,** to use ordinary care to avoid injury. An instruction to the jury which attempts to define wilful acts or wantonness which does not include the element of defendant's knowledge of plaintiff's danger or such conscious indifference to consequences as would be equivalent to wilful and intentional injury, is erroneous. It is held that any general knowledge or information that other persons are placed

in a position of peril by his recklessness or heedless conduct would amount to a legal wilful tort. This case cites and discusses many cases from other states. It is held that when the defendant's conduct amounts to wilfullness and when injury is occasioned by his conscious wrongdoing, the plaintiff's negligence is no defense.

In **Trucking Co. v Fairchild, 128 Oh St 519**, it is held the term "wanton negligence" implies a failure to exercise any care for the safety of those to whom a duty of care is owing when the wrongdoer has knowledge of the great probability of harm to such person which the exercise of care might avert and exhibits a reckless disregard of consequence. The defense of contributory negligence is unavailable to a party whose wanton negligence is the proximate cause of the injury.

The case of **Weller, Extrx. v Worstall, 129 Oh St 596**, arose before the passage of the "guest statute". It was there held that where the plaintiff offers proof that he was a passenger in an automobile operated at a moderate rate of speed when suddenly such automobile left the road and plunged over an embankment, the circumstances thereby established are sufficient to permit an inference of **negligence** under the doctrine of res ipsa loquitur.

**Universal Concrete Pipe Co. v Basset, 130 Oh St 567.** This case is interesting, presenting as it does the characteristic treatment of the questions by Stephenson, J. It did not involve the "guest statute", but the question whether the defendant was guilty of wanton misconduct which would deprive him of the defense of contributory negligence upon the part of the plaintiff and permit a recovery of punitive in addition to compensatory damages. It is held that mere negligence is not converted into wanton misconduct by the use of "wanton" in connection with the specifications of negligence. If wanton misconduct is relied upon facts must be pleaded which reveal on their face the element of wantonness. Wanton misconduct is such as manifests a disposition to perversity and it must be under such

surrounding circumstances and existing conditions that his "conduct will in all common probability result in injury". The term "wanton negligence" is a misnomer pure and simple. "Wanton misconduct is positive in nature, while mere negligence is naturally negative." "A party charged with wanton misconduct is deprived of his defense of contributory negligence." Stephenson, J., delivering the opinion of the Court, says at page 573—

"Wantonness is a synonym for what is popularly known as 'cussedness', and cussedness is a disposition to perversity. An act or omission does not become wanton at the whim or caprice of the pleader, * * *. Facts must be pleaded which reveal on their face the element of wantonness, and they must be proved as pleaded."

And further, on page 575—

"A wrongdoer acts wantonly and wilfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

The Judge quotes Conrad v Wheelock, 24 F. (2nd) 996, to the effect that—

"Wilfulness or wantonness imports premeditation or knowledge and consciousness that injury will result from the act done, whereas 'negligence' conveys the idea of inadvertence as distinguished from premeditation or formed intention."

To constitute wanton negligence the party doing the act must be conscious of his conduct and must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury.

The above case, while not involving the "guest statute", is interesting and instructive. This case definitely discards the term "wanton negligence" as used in **Higbee v Jackson, 101 Oh St 75,**

and **Trucking Co. v Fairchild, 128 Oh St 519.**

**Veechio v Veechio, 131 Oh St 59.** In an action for personal injury instituted by a guest against the operator of a motor vehicle, such guest must plead facts that reveal on their face the element of wilfulness and wantonness else such pleading is demurrable. The guest must plead unequivocally that the operator had knowledge of existing conditions, otherwise no liability is fixed.

**Morrow v Hume, Admx., 131 Oh St 319,** holds that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. On page 324 Williams, J., delivering the opinion of the Court, states—

"Wantonness can never be predicated upon speed alone; but when the concomitant facts show an unusually dangerous situation and a consciousness on the part of the driver that his conduct will in common probability result in injury to another of whose dangerous position he is aware, and he drives on without any care whatever, and without slackening his speed, in utter heedlessness of the other person's jeopardy, speed plus such unusually dangerous surroundings and knowing disregard of another's safety may amount to wantonness."

One page 325—

"There is no evidence in the record to show that the automobile left the road on account of the speed at which it was going, but it appears merely that the machine left the road without explanation as to the cause. Under the circumstances the doctrine of res ipsa loquitur is applicable and the law of negligence governs."

**Akers v Stirn, 136 Oh St 245.** Excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness. Where a trailer attached to an automobile and wobbling back and forth on the high-way creates a dangerous situation for an automobile approaching from the rear at an excessive rate of speed—in attempting to pass such automobile and trailer, the question of whether the driver of the approaching automobile, without heeding the protests of a guest as to the rate of speed and the manner of driving, is guilty of wanton misconduct is one of fact for the jury, under proper instruction of the Court, and it is not error for the Court to refuse to instruct the jury that wanton misconduct is more than negligence, even more than gross negligence. The difference between wanton misconduct and negligence is one of kind and not merely of degree.

We will now give consideration to the decisions of the lower courts in Ohio.

**Fischer v Faflik, 52 Oh Ap 69.** It is there held that one who drives an automobile in the night season along a highway, which at intervals is blanketed with fog, is not guilty of wanton misconduct where, upon emerging from a pocket of fog, he discovers a motor truck and after discovering the perilous situation swerves his car to the left and applies the brakes in an attempt to avoid a collision. Lieghley, J., delivering the opinion states on page 73—

"Whether the driver used any care after the peril was discovered is the issue. By their testimony the witnesses admit that he did."

**McCoy, Admr. v Faulkenberg, 53 Oh Ap 98.** It is there held that a motorist returning from a party at which he had some liquor, although negligent and overconfident in the operation of his car, was not guilty of wilful or wanton misconduct within the meaning of the "guest statute" where he drove his car, after midnight, on a well lighted street at 45 miles per hour turning in and out around traffic, striking a pole when blinded by approaching head lights, resulting in the death of a passenger who had requested that he slow down or let her out, he assuring her that he would get her home safely, and

neither expressly or impliedly refusing her request. The violation of the law is not necessarily wilful or wanton misconduct. The character of the act, within the meaning of the statute, must be determined by whether the misconduct is a wilful disregard of the just rights or safety of others, or of the consequences of action, or a wantonness that is the legal equivalent of wilfulness.

**Murphy v Snyder, 63 Oh Ap 423.** A driver who, upon approaching an intersection at the rate of speed between 55 and 60 miles an hour, observes a car on his right and then proceeds to look at the baggage on his running board and at his wrist watch and fails to notice the traffic light or make any observation of the highway and when his attention is called to the car approaching on the intersecting road accelerates his car in such manner as to pass in front of such approaching car and becomes involved in a collision with it, is, as a matter of law, not guilty of wilful or wanton misconduct so as to be liable in damages for the death of the guest. This case seems to us to justify a finding that the operator was guilty of wilful and wanton misconduct in the way he drove the car at the intersection.

The latest case to which we have had our attention directed is **Hottel v Read, 66 Oh Ap 323.** It is there held that where the driver of an automobile driving at a high rate of speed over an icy pavement and discovering a slow moving bus as he reached the crest of a hill, exercised some care to avoid the injury to his guest, after he became conscious of the danger, he was not guilty of wanton misconduct and that it was the duty of the trial judge to so determine as a matter of law. Doyle, J., delivering the opinion of the Court says on page 326—

"The tests to be applied in the instant case are (1) Did the driver have actual knowledge of the peril and (2) Possessed of that knowledge did he thereafter exercise any care whatever or did he continue on without care in utter

heedlessness of his guest's jeopardy and with a knowing disregard of her safety."

Considering the facts disclosed by this case as to the condition of the highway and the speed at which the driver of this car went in comparison to the speed of other drivers using the highway, we would be inclined to the opinion that he was guilty of wanton misconduct in driving his car as he did. The case is much stronger against the driver than is the case at bar.

**Mandevers v Stove & Mfg. Co., 28 Abs 255,** by this Court. It is held that a petition so phrased as to leave no other inference than that the plaintiff was riding as a guest does not state a cause of action for personal injuries to the plaintiff where it fails to allege wilful or wanton misconduct.

There are a number of cases which have held that the action of the driver is sufficient to establish wanton misconduct, among them—

**Thomas v Foody, 54 Oh Ap 423.** Acts to be wanton within the meaning of the "guest statute" must be done with actual knowledge of existing conditions or surrounding circumstances and must be such as to make the malfactor conscious that his conduct will in all common probability result in injury to his guests. Such acts must be unequivocally pleaded. Evidence establishing that the driver operated the car at an excessive speed around curves in spite of remonstrances on the part of the guest with knowledge of existing circumstances, showed a consciousness on the part of the driver that his conduct would in all probability result in injury to his guest and is sufficient to show wanton misconduct.

**Akers v Chaplain, 30 Abs 370,** holds that evidence that defendant driving at excessive speed had knowledge of all the surrounding circumstances and existing conditions and that in response to repeated protests of a guest against such speed and the request to let the guest out of the car replied, "Oh, go to hell", and continued such speed until the collision, tends to prove conduct on the part of the defendant manifesting

a disposition to perversity in ignoring such protest and in denying the guest his legal right to have defendant stop the car and let him out. A verdict for the plaintiff guest on the theory of wanton misconduct is justified by the facts therein stated.

Weaver v Mark, 112 F. (2nd.) 917, holds that in an action for injuries sustained by an occupant, a complaint alleging that the automobile was driven 80 miles an hour at night and through a village at 60 miles an hour, that the driver boasted that he could go through a train if it did not get out of his way and that he drove while intoxicated at a speed in excess of 60 miles, after having been asked to let the occupant out, sufficiently alleged wilful and wanton misconduct of the driver within the "guest statute" of Ohio. We agree with this holding.

We have been at length in presenting the various holdings of the courts of Ohio upon this important question. The "guest statute" was passed for the very definite purpose of preventing the recovery by a guest against a host unless the injuries are caused by "the wilful or wanton misconduct of such operator". The evidence in the case at bar does not seem to us to present facts, in any degree approaching those existing in the several cases we have cited in which courts have determined that the driver was not guilty of wanton misconduct. The fact that the driver of this car looked to his right at the conservancy building for at least two squares; does not disclose any wanton misconduct as defined in the several cases. He had no knowledge of any condition which would meet the requirements of the 3rd syllabus of Veechio v Veechio, 131 Oh St 59, and other cases that we have quoted to the effect that in such action the guest must plead unequivocally that the operator of the motor vehicle had knowledge of existing conditions, otherwise no liability is fixed.

What were the conditions that existed of which the driver had knowledge? The road was open, straight, level and well paved. His speed was reasonable. No cars were on the road. Nobody really knows what caused the car to swerve to the left, whether it was a blow-out on a hot day or some slight obstruction in the highway or an unconscious turning by the driver to the left. It is certain that the fact that he had driven without keeping his eyes on the highway for two squares had nothing to do with the condition that caused the machine to suddenly swerve to the left. There were no facts of which he had knowledge which disclosed on their face the elements of wilfulness or wantonness or acts which manifested a disposition on his part to perversity or a knowledge that his conduct would in all common probability result in injury. There were no facts that implied a failure on his part to exercise care when he had knowledge of any great probability of harm to the persons which the exercise of care might avert, nor did the facts exhibit a reckless disregard upon his part of consequences.

The most that can be said is that he was negligent in not keeping his eyes more steadfastly upon the highway. Even this would not have avoided the accident if it was due to a blow-out. Those who drive a car are conscious of the fact that while perfect driving might require the driver to keep both hands upon the steering wheel and his eyes fixed upon the road, that the ordinary driver, especially one who is not a professional, is often in the position of not continuously observing the roadway. A car which is equipped with a radio has a dial which must be adjusted so as to get the desired station. This requires that the driver, for at least a short period of time, take his eyes off the highway. One who lights a cigar in a car either by match or an electric lighter must for an appreciable period take his eyes off the road. If an accident occurred by reason of this momentary lack of visibility of the roadway, no one would claim that the driver was guilty of wanton misconduct. Friendly groups of riders enjoying an automobile trip will often be so engaged in conversation that the driver loses contin-

uous vision of the roadway and many accidents do occur because of such negligent driving, but we do not believe that they can be tortured into "wanton misconduct".

If the car turned to the left, due to a flat tire, the driver was not even guilty of negligence. He could turn to the left due to striking an obstruction or a soft spot in the highway. He still would not be guilty of wanton misconduct. If the evidence in this case makes him liable to a guest, then we may as well discard the protection sought to be given to the host by the "guest statute", and admit that practically any act leading to the injury of the guest, which ordinarily would be regarded as negligence, could be construed as wilful or wanton misconduct. We are of the opinion that there was error in overruling the motion of the defendant for a directed verdict at the termination of plaintiff's testimony and again at the termination of all the evidence. We discover no other prejudicial error.

The judgment of the Court below is reversed and the cause remanded with instructions to sustain the motion for directed verdict at the conclusion of plaintiff's testimony.

BARNES, J., concurs.
HORNBECK, J., dissents.

HORNBECK, J., dissenting:

There is some criticism in the majority opinion of the averments of the petition and of the general charge relative to wanton misconduct but the pleading is not held to be insufficient nor the charge erroneous. I am satisfied that the averment that the defendant drove his car wilfully, wantonly and negligently and the setting out of the factual particulars constituting such wanton acts was sufficient, that the charge of the Court is correct and that the jury was fully justified in finding that the defendant was chargeable with wanton misconduct.

The acts of the defendant may be squared with the definition of wanton misconduct as carried in the second proposition of the syllabus in **Universal Concrete Pipe Co. v Bassett, 130 Oh St 568,** and it is not necessary to cite nor consider other cases because this syllabus sets forth the latest expression of the Supreme Court as to the elements constituting wanton misconduct. It is defined as follows:

"Such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of such surrounding circumstances and existing conditions, that his conduct, will in all common probability result in injury."

Tersely stated, the facts which the jury had the right to find in this case under the evidence are, that the driver of the automobile operated his car at a speed of 40 to 45 miles per hour on a narrow highway, fixed his attention on objects to the right side and rear of the auto, thus taking his eyes completely off his steering wheel, and the road ahead for a distance of two city blocks, and as a result thereof left the road, the automobile turned over and plaintiff was injured. It further appears that defendant at no time did anything to avert the accident.

If such acts, under all the circumstances, do not constitute wanton misconduct, I can conceive of no conduct that could be so characterized. A driver manipulating a car as the defendant did is chargeable with the knowledge that the natural and probable result of his deliberate act will probably cause him to leave the highway and result in damage or injury, and his continued conscious failure to resume such attention to his wheel, as the slightest concern for the welfare of his passengers would prompt, compels the inference that he was utterly indifferent to and heedless of the safety of his passengers. **Morrow v Hume, 131 Oh St 319,** and manifested a disposition to perversity, Universal Concrete Pipe Co. v Bassett, supra.

This case in my judgment presents every element constituting wanton misconduct as defined in every case cited by the majority, save one—**Murphy v Snyder, 63 Oh Ap 423,** and the majority opinion not only criticises this decision but says that the conduct there found not only constituted wanton misconduct but also wilful misconduct.

Some emphasis is placed upon the fact that when the car had come to rest at the side of the road 8 feet therefrom, two of the front tires and and possibly one of the rear tires were flat and from this it is urged that it is impossible to say that the accident was not caused by a blowout or a puncture or some trouble with the tires. It is not necessary to determine that the misconduct of the driver was the sole proximate cause of the injury to plaintiff if it is probable that it was a proximate cause of such result.

The judgment should be affirmed.