Julian *v.* Tornabene, Appellant.

334

Argued April 14, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Francis H. Patrono,* for appellants.

*Bresci R. P. Leonard,* with him *William C. Porter* and *Van der Voort, Royston, Robb & Leonard,* for appellees.

OPINION BY DITHRICH, J., July 17, 1952:

In this action in trespass plaintiffs recovered verdicts for damages for personal injuries resulting from an automobile collision which occurred about 5 p.m.

on May 31, 1948, in Mahoning County, in the State of
Ohio, at the intersection of Route 45 and Gladstone
Road, about 7 miles south of Warren, Ohio. They were
guest passengers in an automobile owned by Harold
G. Johnson, one of the defendants, and driven at the
time of the accident by the other defendant, Alphonse
L. Tornabene. Johnson was an occupant of the car.

The Ohio law determines the substantive rights of
the parties, that state being the place of the alleged
tort. *Rodney v. Staman*, 371 Pa. 1, 89 A. 2d 313.
The Ohio Guest Statute (4A, Page, Ohio General Code
Annotated, §6308-6) permits a recovery by plaintiffs
only if their injuries were caused by the "wilful or
wanton misconduct" of defendants. The case was tried
in Washington County, Pa., and resulted in verdicts in
favor of plaintiffs and against both defendants, who
were found guilty of wanton misconduct. Following
the verdicts, defendants moved for judgment n.o.v.,
while plaintiffs moved for a new trial on the ground
that the verdicts were inadequate. Plaintiffs' motion
was granted and no appeal taken. Defendants' appeal
is from the order overruling their motion for judgment
n.o.v.

In the evening of May 29, 1948, plaintiffs and three
young men—Johnson, Tornabene and Jacob Zirwas—
drove from Carnegie, Pa., plaintiffs' home, to Geneva-
on-the-Lake, Ohio, where they planned to spend the
Memorial Day weekend. About noon on Monday, May
31, the men met the girls on the beach and told them
that if they wanted to ride back home with them they
would have to leave that afternoon because Tornabene
had a date at home that evening. They had planned
to spend the day at the beach but they started home
about 3 p.m., with Tornabene at the wheel. The party
traveled south on Route 45, a two-lane blacktop high-
way, making two stops prior to the accident—one at
a gasoline station and another at a refreshment stand

some 15 miles north of Warren. Although traffic was heavy and the posted speed limit was never higher than 50 m. p. h., after leaving the refreshment stand Tornabene drove 65 to 70 m. p. h. After passing through Warren, where traffic moved very slowly, he drove at speeds of 75 and 80 m. p. h. While traveling at high speed, he went through stop signs without stopping; he played with the steering wheel as he kept time to radio music; and he took rash chances in passing on curves where he did not have a full view ahead and also passed other cars on the straightaway when oncoming traffic made passing unsafe. On at least one occasion his reckless driving forced a car coming toward them off the road. The manner in which Tornabene drove caused plaintiffs great concern and fright. They protested several times but to no avail. Even Johnson, the owner of the car, couldn't relax but felt he had to keep watching the road. When Tornabene made the particularly dangerous passing referred to, one of the men said, "Al, what are you trying to do?" Tornabene's rejoinder to the complaints was, "Why don't you people calm down? I'll get you home all right."

When the Johnson car was some 300 feet from the intersection where the collision occurred, Mary Bewick, one of the plaintiffs, saw an automobile traveling east on Gladstone Road and approaching Route 45. When the other car was 55 to 150 feet from the intersection, being half as far from it as was the Johnson car, its speed was noticeably increasing. Tornabene, who had been driving at 65 to 70 m. p. h., increased the speed of the Johnson car, saying, "Who does he think he is?" At the same time the girls on the front seat, being frightened, called a warning. The speed of neither car was slackened as it raced toward the intersection, Tornabene's own testimony being that the speed of the approaching vehicle was 55 m. p. h. when 20 feet from the intersection. The force of the ensuing collision caused

the Johnson car to turn over three times. Plaintiffs were seriously injured and were removed by ambulance to hospitals in Warren. That evening Tornabene said to the two girls who had been sitting on the front seat with him: "If I had listened when you girls told me to slow down, we would never have had this accident. I should never have tried to beat that other fellow."

Wanton misconduct may not be predicated on excessive speed alone. *Morrow v. Hume,* 131 Ohio St. 319, 3 N. E. 2d 39. Wanton misconduct within the meaning of the statute "comprehends an entire absence of all care for the safety of others and an indifference to consequences. Higbee Co. v. Jackson, 101 Ohio St., 75, 128 N. E., 61, 14 A. L. R., 131. It implies a failure to exercise any care toward those to whom a duty of care is owing when the probability that harm will result from such failure is great, and such probability is known to the actor": *Tighe v. Diamond,* 149 Ohio St. 520, 526, 80 N. E. 2d 122. In *Jenkins v. Sharp,* 140 Ohio St. 80, 42 N. E. 2d 755 (relied on by our Supreme Court in *Rodney v. Staman,* supra), the Court said (pp. 82, 83): "Wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortious character. . . . '[W]anton misconduct is such as manifests a disposition to perversity.' Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of the danger, with indifference to consequences and with absence of all care. . . ."

Moreover, it is not only the driver's conduct at the moment of collision and immediately prior thereto which is significant but his conduct must be carefully weighed and measured during the entire trip. *Kennard v. Palmer,* 143 Ohio St. 1, 53 N. E. 2d 908; *Major v. Liggett,* 72 Ohio App. 71, 50 N. E. 2d 795.

We have viewed the evidence and all inferences reasonably deducible therefrom in the light most favorable to plaintiffs in view of the verdicts (*Pinkshaw v. Cambria Township*, 170 Pa. Superior Ct. 213, 85 A. 2d 693; *Murphy v. Snyder*, 63 Ohio App. 423, 27 N. E. 2d 152), and we cannot conclude as a matter of law that defendants were not guilty of wanton misconduct judged by the standard of conduct established both by the *lex fori* and the *lex loci delicti*.

Appellants contend that there is no proof that Tornabene had any knowledge that there was great probability that harm would result from his failure to exercise any care toward his guest passengers. The contention is based on the uncontradicted evidence that the Johnson car had the right of way at the intersection by virtue of the presence of a stop sign facing traffic traveling east on Gladstone Road approaching Route 45. Appellants argue that before Tornabene could possess knowledge that harm would probably result to the occupants of the Johnson car he would have had to decide that the other car would probably ignore the stop sign. They further argue that Tornabene, driving on a through highway, cannot be held to have had knowledge that an automobile approaching on an intersecting road would probably ignore the stop sign facing him. But appellants' contention fails to recognize what must be regarded as fact in view of the jury's determination; namely, that the approaching automobile increased its speed as it drew near the intersection; indicating in no way that its driver was preparing to stop—indeed, all indications being to the contrary—and that Tornabene, as evidenced by his remark and concomitant increase in speed, was plainly aware of the movements of the approaching automobile and knew that he was engaging in a race to the intersection.

However, appellants maintain that the evidence relating to distances and speeds of the two cars involved

was too vague, speculative, uncertain and contradictory to afford sufficient basis for a finding that Tornabene "had knowledge of a situation in which it was *probable* that the other car would not stop." It is true that appellees were unable to state with absolute certainty the relative distances and speeds of the automobiles, an inability which may be laid to their extreme fright and shock in reaction to the rapidly developing danger; but their testimony was not so speculative, vague, uncertain and contradictory, as to warrant taking the case from the jury. We have already recited facts relating to distances and speeds as the jury might have found them and we are of opinion that they are sustained by the evidence. Evidence of exact speeds and distances, under the circumstances, was not possible nor essential to enable the jury to visualize what actually happened and to find that "notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he [Tornabene] proceed[ed] into the presence of the danger, with indifference to consequences and with absence of all care."

Appellants have cited Ohio cases where evidence of misconduct was held insufficient to go to the jury. In none of those cases is the misconduct described as flagrant as that in the case at bar. In any event they "furnish us no conclusive criterion of decision. Whether or not the evidence as a whole was sufficient to take the case to the jury on the indicated issue is to be determined by the *lex fori*: see §595 of the Restatement [Conflict of Laws] and Singer v. Messina, [312 Pa. 129, 136, 167 A. 583] . . .": *Rodney v. Staman*, supra, p. 9. *Murphy v. Snyder*, supra, chiefly relied upon by appellants, is not only distinguishable on the facts from the case at bar, but in *Haacke v. Lease*, 41 N. E. 2d 590, in a comprehensive opinion reviewing in chronological order the many cases in Ohio involving the

question of "wanton misconduct" in relation to the " 'guest statute' and other actions", the decision in *Murphy v. Snyder* was criticized by the Court of Appeals of Clark County, Ohio, in an opinion by the presiding judge. He said (p. 598) : "This case seems to us to justify a finding that the operator was guilty of wilful and wanton misconduct in the way he drove the car at the intersection." The Court of Appeals for Mercer County had found that he was not guilty of wilful and wanton misconduct.

We are of opinion that the question of liability under the Ohio statute, under all the evidence, was properly for the jury.

Order affirmed.