Alverta **LIVERGOOD** and Omer Livergood, Her Husband, in Their Own Right, and on Behalf of Roy Livergood, Plaintiffs,

v.

S. J. **GROVES** & **SONS COMPANY**, a Minnesota Corporation, Appellant,

v.

Charles **LIVERGOOD**, Third-Party Defendant.

No. 15552.

United States Court of Appeals Third Circuit.

Argued Feb. 8, 1966.

Decided June 2, 1966.

270

Donald W. Bebenek, Pittsburgh, Pa., (Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, Pa., on the brief), for appellant.

James P. Gill, Pittsburgh, Pa., (Edward O. Spotts and Spotts, Gill, Gavin & Morrow, Pittsburgh, Pa., and Joseph J. Lee, Clearfield, Pa., on the brief), for plaintiffs-appellees.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

GANEY, Circuit Judge.

At approximately 11:15 a. m. on June 30, 1963, plaintiffs were injured, two of them seriously, when the passenger car in which they were traveling collided with defendant's flat-bedded truck on Route 879, a winding country road bordering the bank of the West Branch of the Sus-

quehanna River. It was a two-way black-top highway, the main traveled portion of which was eighteen feet wide; the center was not marked by a line. Its edges were in a jagged condition, reducing the most traveled portion of the road to about sixteen feet in width. The point of collision was about five and one-half miles northeast of Clearfield in Goshin Township, Clearfield County, Pennsylvania. Immediately prior to the collision, plaintiffs were traveling in a southwesterly direction, while the truck, carrying two tons of baled hay, forming a load over six feet high, from a farm one mile southwest of Carensville, to Frenchville, was moving in the opposite direction. Sergeant Andrew F. Zavatsky, a Pennsylvania State Trooper, testified that the width of the truck bed, by actual measurement, was three inches short of eight feet, the legal maximum dimension.

The question of liability in the diversity action, in which plaintiffs demanded a jury trial, depended on which of the vehicles extended over the center of the highway at the time of collision.[1] There were no eyewitnesses to the accident other than the occupants of the two vehicles. The jury's answers to special interrogatories reveal that defendant was guilty of negligence which was the proximate cause of the injuries and damages sustained by plaintiffs, and that the third-party defendant, the operator of the passenger car in which plaintiffs were traveling, was not. The District Court denied defendant's motion for a new trial.[2] Although defendant has mistakenly appealed from the order denying a new trial, we consider its appeal as if it were from the final judgment. See Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Cromling v. Pittsburgh and L. E. R. Co., 327 F.2d 142, 144, n. 1 (C.A.3, 1963).

Defendant's first point is that the trial court erred in allowing the recorded testimony of a witness, taken out of the hearing of the jury, to be later read into evidence before the jury for the purpose of impeaching its witness, George J. Lash, the driver of the truck. It contends that such evidence was about a collateral matter, and its admission was highly improper and extremely prejudicial to its case, requiring the granting of a new trial.

Prior to testifying on their own behalf, plaintiffs called as a witness in their side of the case one Kenneth Billotte, an inhabitant of Frenchville, a town 20 miles northeast of Clearfield. He testified that while returning by automobile from Clearfield he came upon the scene of the accident about an hour after the collision. In response to a question whether he had on his trip to Clearfield that day observed the truck before the time of the accident, he stated that about *a quarter of a mile* south of the point of collision it crowded him off the road. Defendant's objection to this answer was sustained. Although the trial court gave no reason at that time it later said that its ruling was based on the fact that the encounter was too remote from the scene of the accident to have any bearing on the collision, basing its ruling thereon on the distance the truck was away from the accident on another part of the road, but not sustaining it as to the width of the truck. Plaintiffs' counsel questioned Billotte about the position of the two vehicles on the highway after the collision and then requested a sidebar conference. He informed the court that he wished to learn from Billotte, among other things, whether he was crowded off the road because of the manner in which the

---

1. Section 1006 of the Pennsylvania Motor Vehicle Code, 75 P.S. § 1006, provides in part: "Meeting of vehicles. Drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other at least one-half (½) of the main traveled portion of the highway."

2. The District Court gave its reasons for denying the motion for a new trial in an opinion filed June 22, 1965. That opinion apparently has not been made available for publication.

truck was loaded. The court explained that it was not limiting plaintiffs with respect to any testimony that may show that physically the truck was too wide to occupy less than half of the road. After some discussion, the court made the following suggestion: "Let's do this. Let's hear what the witness has to say out of the hearing of the jury." In response, counsel for defendant stated: "All right. I have no objection to that." The court thereupon recessed the jury for a short time, and Billotte was further examined out of their presence as follows:

By Mr. Gill

     \*    \*    \*    \*    \*    \*

Q. Well, what I am getting at, was the truck itself over the center line or was the truck just too wide for this road?

A. Well, it could be a little bit of both.

Q. That is your opinion? I mean, that is your recollection that it was both?

A. Right.

Q. He was both on your side of the road and the truck was too wide also?

A. Right.

By Mr. Bebenek

Let me ask him just a couple of questions.

The Court: Proceed.

Cross-Examination by Mr. Bebenek:

Q. You say this happened somewhere near a bridge?

A. Right near the side of the bridge.

Q. Is that a real sharp hairpin turn? That is, when you come down the hill you make a sharp hairpin turn and go up the hill between Clearfield and the point of the accident?

A. Right.

Q. Is that where that happened?

A. Right where that bridge is before you go up that hill.

Q. All right, which side of the bridge did it happen on?

A. On the other side, Clearfield side of the bridge.

Q. So, the truck was still coming down the hill and heading for the sharp turn and the bridge?

A. Right.

Q. Okay. If I told you that it was a mile and one-fourth from the scene of the accident, would you agree with that?

A. Well, I couldn't say. I said approximately when he asked me the questions so—

Q. Okay.

Your Honor, I am going to renew my objection to this testimony, and I will submit to the Court that that bridge, by actual measurement, is one mile from the scene of the accident.[3]

The Court: We feel that the circumstances are too remote from the scene and we will sustain the objection.

However, with the court's permission, Mr. Gill questioned Billotte further about the width of the truck in this manner:

Q. All right, assuming that the truck was on its own side of the road as to this road surface in this area— incidentally, when the truck passed you, was the road the same as where the accident happened in width and type?

A. About the same.

Q. If the truck had been on its own side of the road, would it have extended over to your side of the road also, even though it was on its own side?

A. Would you repeat that please?

Q. \* \* \* If the four wheels of the truck had been on its own side of the road, would the truck have still been too large in width so that it would

---

3. From the record, we are unable to ascertain if this was actually done by independent proof.

have been extended over to your side of the road?

A. No, not too much.

Q. What?

A. Not too much.

Q. But, would it have extended on your side of the road some?

A. Yes, right.

At this point Mr. Bebenek objected to Billotte giving opinion evidence for the actual measurement of the width of the truck and road were already in evidence. The court sustained the objection and gave permission to recall the jury. In chambers at the close of the plaintiff's case, there was some colloquy which will be adverted to later.

After asking Billotte in the presence of the jury eight additional questions having no bearing on the encounter episode, Mr. Gill turned the witness over to the defendant and third-party defendant for cross-examination. Counsel for the latter stated that they had no further questions to ask of him. The court thereupon excused the witness, Billotte.[4] No objection was interposed to this action.

Later in chambers, after plaintiffs had rested their case as to the question of liability, Mr. Gill stated to the trial judge as follows:

"Now, on cross-examination I * * * propose to ask Mr. Lash [the driver of the truck] if it was not true that first, I will identify this bridge that is down the road, whether [sic] it is, and I will bring out the fact that the road is approximately the same width at that point as it is at the point of the accident and I will ask him if it is not true that he crowded Mr. Billotte off the road at that point just prior to the accident. In the event of a negative answer, I propose to call Mr. Billotte too. This is a matter of credibility now. If he says that he did, then, of course, that is that."

To this proposal, the court said: "Well, I think you can attack his [Lash's] credibility on that * * * if you get a flat no answer." During cross-examination, Mr. Lash was questioned by Mr. Gill in this way:

Q. All right. Now isn't it true that right in the area of that bridge, that you forced another car off the road on your way up there?[5]

A. No.

Q. That is not true?

A. No, not to my knowledge.

Q. Well, you would know it, wouldn't you?

A. I sure should have. That's why I said no.

Following the completion of cross and redirect-examination of Lash in defendant's side of the case, Mr. Gill, over defendant's objection, was permitted to read to the jury Billotte's recorded testimony taken out of the hearing of the jury. Before the reading had been completed, the court admonished the jury in this fashion: " * * * This testimony is not offered, and is not to be considered by you, as any evidence of the position of the cars, and particularly of this truck, at the time of the accident, but it is offered solely as evidence of the witness' credibility; that is, his opportunity to know, observe and to testify. It is only offered with relation to Mr. Lash's prior testimony. It is not offered with respect to the position of the truck at the time of the accident."

■ Defendant may not seriously object to the fact that Billotte was questioned out of the hearing of the jury or that such testimony was read to the jury instead of having him testify in person before that body. The record reveals that it consented to that arrangement either expressly or by failing to object seasonably.

---

4. Frenchville, the town where Billotte lived, is about 105 miles, as the jets fly, from Pittsburgh, where the trial was held in March of 1965.

5. This topic was not touched upon on the direct examination of George J. Lash, and defendant did not object to it being raised on cross-examination of that witness.

■ In support of its point that the transcribed testimony should not have been revealed to the jury under any circumstances, defendant argues that such testimony was not relevant for impeachment purposes. The question is one of degree and, therefore, was it too remote? Billotte said that the encounter was about one-quarter of a mile from where the accident occurred; counsel for defendant contended that it was at least a mile, but never offered any proof to support that contention. From the record before us we have no alternative but to accept the distance given by Billotte. But assuming, *arguendo*, that it was a mile, in Finnerty v. Darby, 391 Pa. 300, 316, 138 A.2d 117, 125, (1958), the Supreme Court of Pennsylvania said: "Remoteness of the evidence is not determinable by distance and time alone, but as we have just said, depends upon the facts in each case. No exact limitation of distance or time can be fixed." In the case before us, the trial court ruled that the encounter was too distant from the point of the accident to have any independent value for establishing that the truck was on the wrong side of the highway at the scene of the accident. The correctness of that ruling is not before us.[6] But assuming further that it was correct, evidence which is too remote and therefore inadmissible for certain purposes may be admissible for others.[7] It has been held by a number of courts that the condition of driving at another point may be used for purposes of corroborating [8] or rebutting [9] testimony, or for attacking the credibility of witnesses. See Annotation, 46 A.L.R.2d 9–93, for these and other problems on the "admissibility of evidence concerning the manner in which a participant in an accident was driving a vehicle before he reached the scene of the accident."

■ Prior to the time Billotte testified no eyewitnesses to the accident had testified that the truck was over the center of the road at the point of the accident; that testimony came later. Nevertheless, no attempt was made by plaintiffs to use Billotte's testimony to corroborate the testimony that the truck was over the center line at the time of collision. However, besides his quoted testimony, Lash said that he was operating his truck along the highway on "the extreme right side." Hence Billotte's testimony, although it may have been inadmissible at the time he testified, became admissible, at least, for the purpose of rebutting Lash's testimony, as well as attacking his credibility. The trial court did not err in permitting Billotte's transcribed encounter testimony to be read to the jury for impeachment purposes.

■ Regarding Billotte's testifying while the jury was recessed, defendant waived its right to pursue questioning him further at that time by failing to so do after it was given that opportunity, as indicated by the transcript of the colloquy which took place immediately after the trial court sustained its objection to Billotte testifying as to the width of the truck before the jury returned:

Mr. Bebenek: Are you going to ask this witness more questions?

Mr. Gill: Yes, I have more questions of this witness.

The Court: But not on this line.

Mr. Gill: Not on this line.

The Court: All right.

6. However, see Boyd v. Midland Co-op, Inc., (Okl.Sup.Ct.1961, 364 P.2d 670), where Court held that trial court did not abuse its discretion in permitting testimony that car was over the line at distances of 1½ to 1¾, and 2 miles from scene of accident.

7. See generally, 1 Wigmore on Evidence (3rd ed.) § 13.

8. Shellenberger v. Reading Transp. Co., 303 Pa. 122, 217, 154 A. 297 (1931); Gregg v. Fisher, 377 Pa. 445, 453–454, 105 A.2d 105 (1954); Finnerty v. Darby, 391 Pa. 300, 138 A.2d 117 (1958); Julian v. Tornabene, 171 Pa.Super. 333, 90 A.2d 346 (1952).

9. In the case of Finnerty v. Darby, supra, note 6, the plaintiff testified that he was driving his car not more than 25 miles per hour.

*Just a minute. We will see if counsel have anything further to pursue?* [Italics ours.]

Mr. Gill: No, your Honor, that is all we have.

The Court: We will resume the jury testimony.

Mr. Gill: Yes. This will be off that point.

(Whereupon the jury was returned to the court room).

■ Also in support of its first point, defendant claims that it did not have sufficient opportunity to further cross-examine Billotte on other factors that were not brought out in the taking of his testimony, that is, whether he was actually forced off the road by defendant's truck. Suffice it to say that defendant's only objection to the admissibility of Billotte's statement for purposes of impeaching Lash's credibility was that it would do indirectly what the trial judge had ruled could not be done directly, namely, place before the jury testimony bearing upon the location of defendant's truck at another point for the purpose of proving its position at the time of the accident. The defendant, however, did not object either to Billotte's statement being read to the jury in his absence or to its being unable to cross-examine him more extensively. The issue as to the insufficiency of the cross-examination thus has not been preserved for appeal.

■ Defendant also claims prejudicial error in the trial court's refusal to allow a diagram sketched by Sergeant Zavatsky while testifying on cross-examination, to go out with the jury during their deliberation. The diagram was drawn on a three by two foot pad of white paper which had been placed on an easel in the court room. The court stated in its opinion denying the motion for a new trial:

Finally a drawing was made in the course of testimony by a police officer on which he sketched the road, the position of the vehicles, and measurements that he had taken. This was made on a large pad of paper which the Court uses in place of a blackboard because of better visibility, the use of various colored marking pencils, and because it can be preserved during the course of trial in the event other witnesses so desire to illustrate their testimony. The drawing was freehand, and not to scale. The Court explained its use to counsel stating that it would be marked as a trial exhibit and preserved for use during trial, but that he did not contemplate sending it out to the jury, since all the markings thereon were merely notations of oral testimony given, and should only be kept to explain the recorded oral testimony * * *.

The defendant aptly referred to the drawing in his summation as "what may look like something we ought to enter in the International Abstract Art Exhibition next time it is in Pittsburgh." We think the trial court was acting within the area of its discretion in not allowing the drawing, sometimes referred to as a "chalk representation", to go to the jury room.[10]  Hewitt v. United States, 110 F.2d 1, 8 (8 Cir. 1940), cert. denied, 310 U.S. 641, 60 S.Ct. 1089, 84 L.Ed. 1409.

■ Finally defendant contends that "the evidence so preponderated in favor of the defendant, or at least so clearly showed the negligence of the third-party defendant, Charles Livergood, that it was obvious that the physical facts and actual testimony concerning the happening of the accident was completely disregarded by the jury and that the very serious injuries sustained by the plaintiffs clouded their reasoning in

---

10. For a comprehensive discussion on some of the problems raised by the use and admissibility of maps, plots and other drawings to illustrate or express testimony, see Anno. 9 A.L.R.2d 1044–1125.

In this connection, see United States v. D'Antonio, 324 F.2d 667 (C.A.3, 1963), cert. denied, 376 U.S. 909, 84 S.Ct. 662 11 L.Ed.2d 607.

this matter." It is well settled that a motion for a new trial on the ground that the verdict is against the weight of the evidence is addressed primarily to the sound discretion of the trial judge. Pritchard v. Liggett & Myers Tobacco Co., 350 F.2d 479, 482 (C.A.3, 1965).

The issues in the action before us were clear cut and comprehensible to the ordinary layman. In the main action the big question was whether the truck extended over the center line of the highway immediately before the collision, and in the third-party action, it was whether any part of the passenger car was left of center at the critical time. As the District Court noted in its opinion, contrary to defendant's assertion here "the physical evidence of debris, tire marks and the final position of the vehicles was inconclusive to establish the actual point of impact." This is a correct appraisal of that evidence. Defendant seems to concede this much by its omitting to file a motion for judgment n.o.v. The testimony of the driver of the truck conflicted sharply with that of the occupants of the passenger car who were able to testify as to the position of the vehicles at the time of collision. The outcome of the case, as in most jury cases, depended on which side the jury would believe. The jury accepted the story of the plaintiffs and the third-party defendant, and placed no confidence in that of the truck driver. The ultimate factual determinations made by the jury were found by the trial court as not being against the weight of the credible evidence. The defendant has not shown us "special or unusual circumstances which clearly indicate an abuse of discretion in that the trial court failed to apply correctly the proper standards" in ruling on that part of its motion for a new trial based on the assertion that the verdict was against the weight of the evidence. See Lind v. Schenley Industries, Inc., 278 F.2d 79, 88 (C.A.3, 1960), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60.

If defendant's contention is to have any validity here, then any jury verdict in a serious bodily injury case where the testimony is conflicting would be violable. Here the trial circumstances were not such as would have required the trial court to grant defendant's motion.

The judgment and order of the district court will be affirmed.