Singer, Admrx., Appellant, *v.* Messina.

130

Argued April 19, 1933. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, DREW and LINN, JJ.

*C. Brewster Rhoads* of *Montgomery & McCracken,* with him, *Laurence H. Eldredge,* for appellant.—The court below erred in holding there was no evidence of defendant's negligence: Cormican v. Menke, 306 Pa. 156; Simrell v. Eschenbach, 303 Pa. 156; Mason v. Lavine, 302 Pa. 472; Filer v. Filer, 301 Pa. 461; Farley v. Ventresco, 103 Pa. Superior Ct., 98; McGrath v. Penna. R. R., 71 Pa. Superior Ct. 1; Cordts v. Vanderbilt, 147 Atl. 464; Hammond v. Morrison, 90 N. J. L. 15.

The court below erred in holding as matter of law, against the jury's verdict and the presumption that a decedent exercised due care, that plaintiff's intestate was contributorily negligent: Henigin v. Booth, 307 Pa. 528; Doyon v. Massoline Motor Car Co., 98 N. J. L. 540; Harkins v. Bus Co., 308 Pa. 109; Osbun v. De Young, 99 N. J. L. 204; Dickerson v. Grocery Co., 100 N. J. L. 118; McLaughlin v. Damboldt, 100 N. J. L. 127; Vollinger v. Schwartz, 137 Atl. 646; Seibert v. Goldstein, 99 N. J. L. 200.

The question of contributory negligence was a question of substance to be determined by the law of the lex loci: Bayuk v. Wilson-Martin Co., 81 Pa. Superior Ct. 195; Marshall v. R. R., 81 N. H. 548; Atchison,

etc., Ry. v. Spencer, 20 Fed. (2d) 714; Central Vermont Ry. v. White, 238 U. S. 507; Herron v. Ry., 283 U. S. 91.

*Ward C. Henry*, with him *Swartz & Campbell*, for appellee.—The decedent was guilty of such contributory negligence as to overcome the presumption of due care and in determining whether the case should be submitted to the jury the law of the forum governs: Ferguson v. R. R., 71 N. J. L. 647; Fortein v. R. R., 90 N. J. L. 137.

OPINION BY MR. JUSTICE SCHAFFER, June 30, 1933:

Plaintiff brought this action to recover damages for the death of her husband, due, so she alleges, to the negligence of an employee of defendant. As the accident which caused his death took place in the State of New Jersey, she sues as administratrix ad prosequendum. The jury found a verdict in her favor. Judgment non obstante veredicto for defendant was entered by the court below. Plaintiff appeals.

On the night of December 19, 1929, plaintiff's husband was driving a large six-wheeled truck, weighing with its load about seventeen tons, along the Lincoln Highway from Philadelphia to New York. The truck was 35 feet long and 10 feet 6 inches high. About 10 o'clock he reached a low point in the road known as Mutton Hollow. It was a drizzly, rainy, very foggy night. Deceased stopped his truck in the hollow, apparently because the lights had gone out. The highway was composed of a central strip of concrete and two outside strips of asphalt. It was wide enough to carry four trucks abreast. Instead of pulling over to the right side of the road and parking his truck longitudinally at its edge, or even more prudently placing it on a concrete strip 56 feet long and 8 feet 6 inches wide which extended beyond the roadway, within a few feet of where he did stop, the deceased brought the unlighted vehicle to rest with its right front corner at the curb and the

body extending diagonally out into the roadway as far as the center thereof, thus occupying the entire space allotted to vehicles traveling on that side of the road. Just how long the lights had been out or the truck had been standing in this position before the accident happened was not shown and is left to conjecture.

Walter Saville, a witness who testified in plaintiff's behalf, was driving the last truck of a fleet of trucks proceeding in the opposite direction from that of the deceased. He observed the apparently unlighted truck as he passed it, stopped his own about 40 feet beyond, and taking a lighted red lantern in his hand walked back to the standing vehicle. When he reached it, he observed that it had no lights whatever. He walked around it and came upon the deceased, who had three unlighted lanterns in his hand which he had picked up from a stone pile alongside the road. He observed the deceased put two of these lanterns in the cab of his truck. Saville offered deceased the lighted red lantern which he, Saville, was carrying in order that it might be hung on the rear of the truck, saying to him, "If I were you I would put the ones back on the stone pile and I will give you this one. It may protect somebody else coming over the hill." He described deceased as having "got a little boisterous. When I seen he was that way I walked away from him. I just walked up, the hill. I said a couple of words back to him and walked up the hill with my lantern. When he would not accept my light I started up hill to my truck to put it back where I got it."

When Saville walked away from the deceased the latter was engaged in bending the handles on the rear of the truck to hang the still unlighted lantern on. As Saville walked up the hill, he observed a little flicker of light which he concluded was from a match with which deceased was about to light the lantern on the back of his truck. Just then he saw the two headlights of defendant's truck "coming over, out of the fog, down

the hill," about 20 feet away. Saville was then off the road, on the side, about 20 feet from deceased's truck. He testified, the oncoming truck was running about 15 miles an hour. He "hollered" to the deceased and to the driver of the truck approaching, "Look out." The truck passed him and crashed into the stationary one, killing the deceased, who was still at its rear. Saville said he thought the driver of the moving truck did not hear his call and the latter testified he did not, and that he did not see Saville.

Defendant's driver said the fog was very heavy, of the kind that blinded his lights; that as he approached the scene of the accident, and when about half way down the hill, he saw a little flicker, like that of a match, and applied his brakes, and that he was not over 6 or 8 feet from the truck when it loomed up in front of him and he realized it was there. He fixed his speed at 12 to 15 miles an hour and the weight of the truck at about 7 tons. He did not see the deceased until just as he struck him. He gave the distance which he could see in front of his truck as 6 or 8 feet and his stopping distance at the speed he was traveling as about the length of his truck, 18 or 20 feet. He further said he could not stop his truck within the range of his headlights. He was quite seriously injured.

The New Jersey Statute (Act of July 14, 1928, page 728, chapter 281, article VI, section 1) provides: "The operator of a vehicle shall not stop, stand or park such vehicle in a roadway other than parallel with the edge of the roadway headed in the direction of traffic; on the right hand side of the road, and with the curb side of the vehicle within six inches of the edge of the road-way......" Section 2, "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off the paved or improved or main traveled

portion of such highway; provided, however, that in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway, unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway." The New Jersey Statute of 1921 (Cumulative Supplement to Compiled Statutes of New Jersey, 1911-1924, volume 1, page 1983) stipulates that motor vehicles "shall also exhibit a red light visible from the rear; the rays of such rear lamp shall shine upon the number plate carried on the rear of such vehicle in such a manner as to render the numerals thereof visible for at least fifty feet in the direction from which the motor vehicle is proceeding."

Appellant's counsel urges upon us that, as the accident occurred in the State of New Jersey, all questions of negligence, contributory negligence and proximate cause are to be determined by the substantive law of that state, and presents for our consideration numerous decisions of the Court of Errors and Appeals of New Jersey, which he contends hold that such questions are solely for the jury in cases involving highway collisions. We do not read these cases as establishing the principle as broadly as stated, nor do we think any of the cases cited from that jurisdiction disclose the exact factual situation here presented,—proof in the plaintiff's own case that his unlighted truck was parked diagonally across the highway, taking up one-half of it. Thus in Osbun v. DeYoung, 99 N. J. L. 204, 122 Atl. 809, the question was whether there was a tail-light on the forward truck. It was said, it is "settled that it is only where the plaintiff's act is a negligent one, and proximately contributes to the defendant's negligence that caused the plaintiff's injury that the latter is debarred

of a recovery." This means, as we interpret it, that where the plaintiff's act is a negligent one and proximately contributes to the defendant's negligence, the plaintiff is debarred from recovery as a matter of law.

None of the New Jersey cases called to our attention rules that in every case the question of contributory negligence is for the jury. Thus in Dickerson v. Mutual Grocery Co., 100 N. J. L. 118, 124 Atl. 785, cited by appellant, the court holds that the question of contributory negligence is "preëminently" for the jury, and in McLaughlin v. Dambodlt, 100 N. J. L. 127, 125 Atl. 314, also cited by appellant, the court said that such cases were almost "invariably" a question for the jury. We are of opinion, therefore, that were we to consider only the New Jersey law on the point we would not be driven to the conclusion that the trial judge was bound to submit the question of contributory negligence to the jury, or that, having submitted it, the court had no control over its disposition. It is our conclusion that under the law, both of New Jersey and of Pennsylvania, the plaintiff's decedent was clearly guilty of contributory negligence and that there was a total absence of doubt on the point in plaintiff's own case. Under such circumstances, the correct rule is that the procedure followed in the forum is controlling when the question is whether the court or the jury shall pass upon the problem. This is the rule laid down in the American Law Institute's Restatement of the Law of Conflict of Laws in section 642, where the following appears: "Mode of trial. The law of the forum determines whether an issue of fact shall be tried by the court or by a jury. Illustration: 1. By the law of state X the question of contributory negligence must be determined by a jury; by the law of state Y the court, in the absence of doubt, may decide the question without submitting it to a jury. In a suit in Y for a person injured in X the defendant alleges contributory negligence by the plaintiff. The court refuses to submit the issue to the jury on the ground that

there is not evidence of such negligence sufficient to justify a verdict. There is no error." This is further elaborated in the commentaries on the Restatement, section 422, where it is said: "The method of establishing contributory negligence is a question of precedure, and is for the forum. Thus though by the law of the place of the injury contributory negligence must be found by the jury, a court of another state may, if such is its practice, determine the question by the court." The Court of Errors and Appeals of New Jersey has itself recognized and applied this rule in a case involving an accident which happened in Pennsylvania, in Ferguson v. Central R. Co. of New Jersey, 71 N. J. L. 647, 60 Atl. 382, where it is said: "Upon the matter just considered, relating to the quantum of evidence required to place the case within the province of the jury, the law of the forum is controlling. It is a part of the order of judicial proceedings where the action is pending. The law of the place where the right was acquired or the liability was incurred, will not govern the decision of such question. The general rule of the common law, sustained by numerous authorities, is thus stated by Story in Conflict of Laws (8th edition) page 775, viz.: 'That, in regard to the merits and rights involved in actions, the law of the place where they originated is to govern; but the form of remedies and the order of judicial proceedings are to be according to the law of the place where the action is instituted, without any regard to the domicile of the parties, the origin of the right, or the country of the act.' " The rule was re-announced by the court in Fortein v. D., L. & W. R. Co., 90 N. J. L. 137, 100 Atl. 194, where it is said: "The appellant contends that, as the accident to the respondent happened in the State of New York, the duties and obligations of the appellant must be measured by the law of that state. The doctrine contended for, as applied to the case at bar, concerns only the question as to whether or not there was sufficient evidence to go to the

jury upon the question of damages having been sustained by respondent, and this question, as has been decided by this court, is governed by the lex fori. Ferguson v. Central R. Co., 71 N. J. L. 647, 60 Atl. 382." A litigant obtains his substantive rights by the law of the place of injury but not the right to any particular method of establishing or enforcing that right. To hold otherwise would mean that a litigant might go into a foreign forum and take with him not only certain substantive rights but also a certain method of procedure by which he would in effect instruct the court as to the proper division of jurisdiction between the judge and jury. Such a view would require that each state must be prepared to adapt the relative functions of its court and jury to the procedure followed in any one of the other forty-seven states. Applying the rules stated to the case at bar, we find that the substantive law of New Jersey must be applied to determine whether the plaintiff's conduct fell below the standard of care of that state. When, however, the undisputed facts show that this standard was not met, then Pennsylvania, in accordance with our procedure may declare the plaintiff contributorily negligent as a matter of law and withdraw the case from the jury. This is also in accord with section 651 of the Restatement, "If the conduct of an actor to constitute a wrong by the law of the place of wrong must fall below a standard of conduct set up by that law, the law of the forum is applied in the process of determining whether on the facts the conduct fell below the standard."

Appellant's contention, that the primary negligence was that of defendant's driver, in proceeding at a speed which did not permit him to stop within the distance covered by the range of his lights, cannot prevail. The proximate cause of the accident, the causa sine qua non, was the gross failure of duty on the part of the deceased in parking his unlighted truck in the unlawful manner he did, and in placing himself in a position of obvious

danger at its rear without indicating his or its presence by a warning red signal light which might have given notice to the oncoming driver of the peril in front of him. It cannot be convincingly said that deceased did not have time to give warning. He could sooner have lighted one of the lanterns which he had in his hands, or, better still, have taken the one proffered by Saville, and with it given signal. The driver of the approaching truck and Saville both saw the flicker of light made by the striking of the match; had a red lantern been used as a danger signal, it is apparent the former would have seen it, and had the one offered by Saville been promptly accepted when he pointed out the danger to approaching cars, defendant's driver would in all probability have had sufficient warning to have controlled his truck and thus have saved the life of the deceased and injury to himself. The situation reviewed by the Court of Errors and Appeals of New Jersey in Seibert v. Goldstein, 99 N. J. L. 200, 122 Atl. 821, in which the driver of a following truck recovered damages from the owner of an improperly lighted one, stationary in the highway, possesses much appositeness in principle to the case at bar. There, the plaintiff was driving along the Lincoln Highway in the face of a violent snow storm. Said the court: "What was the defendant at this time doing in the exercise of due care for others lawfully on the highway? If the situation confronting him had presented itself to the conductor upon a railway train, he or his assistant would have traveled back with a lantern a reasonable distance to warn approaching trains of the danger......The Motor Vehicle Act, with the road provisions of which the defendant must be presumed to have been familiar, required him to exhibit a red light, visible from the rear of his truck...... In this instance, there was testimony that the defendant's truck, instead of carrying a red light, carried a psuedo white light under the body, or, as the witness relates, 'way underneath, right above the rear axle'; and the

light thus carried is described as 'white and smokeblack.' If this warning light prescribed by the act had been carried, it may fairly be presumed that the plaintiff proceeding cautiously and maintaining a continuous vigil would have observed it in time sufficient to have brought his truck to a halt, and thus have obviated the collision."

It only remains to deal with the contention of counsel that under the doctrine of our recent decision in Harkins v. Somerset Bus Co., 308 Pa. 109, the question of negligence was for the jury. In that case the bus was stopped longitudinally on the right edge of the highway at night on a curve without adequate warning lights. There was some conflict in the testimony as to whether or not the rear of the bus was adequately lighted and as to the speed of the plaintiff's automobile and the visibility under the circumstances. The jury rendered a verdict for the plaintiff and we held that the case was properly for the jury and there was no error in refusing a motion for judgment n. o. v. The case at bar presents uncontradicted testimony which presents a more flagrant case of negligence on the part of the driver than appeared in that case. In such a situation, there was no error in granting judgment non obstante veredicto.

Some point is made by appellant of the fact that the deceased stopped his truck in the vicinity of an electric light which projected from a pole on the opposite side of the road. It is argued that if the deceased had pulled his truck further up the road and brought it into the curb, he would have lost the benefit of the illumination which the street light threw upon the rear of the truck. This light played no part in the accident. Plaintiff in her own case by the testimony of Saville showed that owing to the fog the electric light did not light up the road at all. This was corroborated by a state policeman, another witness called by plaintiff, who reached the scene of the accident shortly after it happened.

The judgment is affirmed.