Limes, Appellant, v. Keller, Admr.

Argued May 24, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

*Arthur Berman,* with him *Joseph Nissley, Livengood & Nissley* and *Compton & Handler,* for appellant.

*William S. Bailey,* with him *John J. Schatt* and *Storey & Bailey,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, June 26, 1950:

On a late September afternoon an automobile in which were seated the owner of the car, Michael A. De-Cavage, Sr. and his 15 year old son, Michael A. DeCavage, Jr., was traveling eastward on South Chapel Street in Newark, Delaware, and approaching a four-track crossing of the Pennsylvania Railroad. The sun was shining and the roadbed was dry. A freight train of approximately 75 to 80 cars in length was proceeding southward on the westernmost track. Immediately after the caboose had cleared the crossing the DeCavage automobile started across the tracks. At that moment an express passenger train, proceeding northward on the third track from the west at a high rate of speed, reached the South Chapel Street crossing after having blown a whistle a quarter or a half mile away. A watchman employed by the Railroad Company was standing on the east side of the crossing with a flag and stop sign in

his hands; he waved the flag and blew his whistle for the automobile to stay back, but it "shot out", was struck by the passenger train, and, according to one of the witnesses, was carried down the track at least three-quarters of a mile; its two occupants were thrown out at a point about a quarter of a mile from the crossing and were instantly killed. Alleging that the car at the time of the accident was being driven by Michael A. DeCavage, Sr., that Michael A. DeCavage, Jr. was a guest passenger, and that the accident was caused by the wilful or wanton conduct of DeCavage, Sr. in the manner in which he operated the car, plaintiff, mother of DeCavage, Jr. and administratrix of his estate, brought suit against the administrator of the estate of DeCavage, Sr. to recover damages resulting from the son's death. The case was tried before a jury, which rendered a verdict for defendant. The court refused plaintiff's motion for a new trial and she now appeals from the judgment entered on the verdict.

We brush aside defendant's contention that it was not shown that DeCavage, Sr. was the owner of the automobile involved in the accident, that he was driving it at the time, and that he and DeCavage, Jr., were the occupants of the automobile and were the persons killed in the accident. Both in the pleadings and at the trial defendant admitted the ownership of the automobile to be in DeCavage, Sr., and, without rehearsing all of the testimony, it is sufficient to say that there was enough circumstantial evidence, even apart from the rebuttable presumption that the owner of the automobile was operating it (*Bastian v. Baltimore & Ohio R. R. Co.*, 144 F. 2d 120, footnote 5, pp. 123, 124), to support plaintiff's claim that it was the father, not the son, who was driving the car; cf. *Flick v. Shimer, Administratrix*, 340 Pa. 481, 17 A. 2d 332. That the occupants of the car were Michael A. DeCavage, Sr., and Michael A. DeCavage, Jr., and that they were the two persons killed in the acci-

dent, is so certain from all the circumstances that it would be the height of legalism to require more proof of the fact than that which was given at the trial.

The real question in the case was whether the operator, DeCavage, Sr., was guilty of wilful or wanton misconduct in his operation of the car. The law of Delaware, where the accident occurred, provides that "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of such owner or operator or caused by his wilful or wanton disregard of the rights of others". 38 Del. Laws, ch. 26, 1; Revised Code of Delaware of 1935, 5713; sec. 175(a). The distinction between wanton disregard of the rights of others and ordinary negligence has been clearly pointed out in several decisions of the Delaware courts, wantonness being defined as including "the elements of consciousness of one's conduct, realization of the probability of injury to another, and disregard of the consequences," whereas the distinguishing characteristic of negligence was said to be "carelessness, thoughtlessness, inattention, inadvertence": *Gallegher v. Davis,* 37 Del. 380, 183 A. 620. "Wanton conduct, resulting in injury to another, . . . may be said to be such conduct as exhibits a conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent, although harm to such other is not intended": *Law v. Gallegher,* 39 Del. 189, 197 A. 479; see also *Biddle v. Boyd,* 39 Del. 346, 199 A. 479; *Tyndall v. Rippon,* 44 Del. ——, 61 A. 2d 422. These definitions are in harmony with the statement of our own Court in *Kasanovich, Administratrix, v, George,* 348 Pa. 199, 203, 34 A. 2d 523, 525, where it was said: "It must be understood, of course, that wanton misconduct is

something different from negligence however gross, — different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong."

The learned trial judge pointed out very clearly to the jury the distinction between negligence and wanton disregard of the rights of others, using indeed for that purpose the very language of the Delaware authorities above cited. Plaintiff complains that the court did not go further and apply those definitions to the evidence in the case, but, having explained the legal conception of wantonness and having recited the gist of the testimony, it was then for the jury to say whether the conduct of the operator of the automobile was, not merely negligent, not merely grossly negligent, but such as to justify the imposition of liability under the provisions of the Delaware statute. Wantonness of conduct must be determined by the facts and circumstances of the individual case and the court could not properly have declared that any particular acts of commission or omission would constitute such wantonness. It may be added that not only do we fail to find anything erroneous or inadequate in the charge of the trial judge, but no specific objections were made thereto although opportunity was afforded to request additions or corrections; only a general exception was taken which is unavailing unless there be basic and fundamental error, which in the present case did not exist: *Susser v. Wiley*, 350 Pa. 427, 431, 432, 39 A. 2d 616, 618; *Steele v. France*, 363 Pa. 165, 167, 69 A. 2d 368, 369; *Voitasefski v. Pittsburgh Railways Co.*, 363 Pa. 220, 226, 69 A. 2d 370, 373.

In the course of his charge the learned trial judge stated that the operator of the automobile drove onto the railroad before he had an opportunity to see sufficiently down the track to know whether or not there was a train coming on one of the other tracks, "and that, I think, would clearly be carelessness and negligence, but that is not sufficient in this case." Plaintiff would give to this statement the meaning that driving onto the railroad without being able to see down the track was not sufficient to impose liability on the operator,—in other words, would not constitute a wanton act. But when we read the context it becomes obvious that what the court said was that *negligence* was not sufficient to impose such liability; nowhere in the charge did he undertake to declare that any particular act on the part of the operator was or was not indicative of a wanton disregard of the rights of others; that question was for the jury alone, and the court properly left it to them. Neither did the court commit error in leaving to the jury the possibility of wilfulness as well as wantonness on the part of the driver of the car inasmuch as the complaint itself charged defendant's decedent with having *"wilfully* or wantonly" operated his automobile in a manner that brought about the accident.

On the whole, the questions at issue were fairly submitted to the jury, and plaintiff's disappointment at the result, however understandable, must be visited upon that tribunal and not upon the court which properly performed its function in the proceedings.

Judgment affirmed.