Rodney *v.* Staman, Appellant.

2

Argued March 25, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

 reargument refused June 24, 1952.

H. E. McCamey, with him Henry R. Beeson, Higbee, Lewellyn & Beeson, J. Lawrence McBride and Dickie, McCamey, Chilcote, Reif & Robinson, for appellant.

David E. Cohen, with him Milton D. Margolis, for appellee.

Opinion by Mr. Justice Jones, May 27, 1952:

While Paul Staman and his wife were travelling by automobile in Ohio, they met with an accident as a result of which both were thrown from the machine and killed instantly. The automobile was owned by the husband and the Stamans were its only occupants. The administrator of the wife's estate, on behalf of two surviving children, sued the husband's estate in the Court of Common Pleas of Fayette County, Pa., for damages for their mother's wrongful death. At trial, the jury returned verdicts for the plaintiff whereon judgments were entered after the court en banc had refused the defendant's motions for judgments n.o.v. and for a new trial. This appeal by the defendant followed.

On the question of liability, the appellant contends (1) that the action is not maintainable under the Wrongful Death Statute of Ohio, (2) that there was no proof that the husband was driving the car at the time of the accident and (3) that the evidence of wilful or wanton misconduct was insufficient under the Ohio decisions to carry the case to the jury. The appellant also assigns several alleged trial errors. The substantive rights of the parties are, of course, to be determined according to the law of Ohio—the place of the alleged tort: *Mackey v. Robertson,* 328 Pa. 504, 506, 195 A. 870.

The Ohio Wrongful Death Statute (7, Page, Ohio General Code Annotated, Sec. 10509-166) declares that the act causing the death must be ". . . such as would have entitled the party injured to maintain an action and recover damages in respect thereof, if death had not ensued . . . ." The appellant contends that this requirement applies to the person of the deceased for whose death the action is brought as well as to the alleged tortious act and that, consequently, the personal

disability arising under Ohio law from the marital relationship between the deceased and the tort-feasor bars an action for the wife's wrongful death as effectively as would the absence of a breach of duty owed by the defendant or the presence of contributory negligence on the part of the deceased. We cannot accept this contention. There are no Ohio decisions on the particular point, but it is well settled in that State that its Wrongful Death Statute gives rise to an independent action accruing only upon death: *Mahoning Valley Railway Co. v. Van Alstine,* 77 Ohio St. 395, 406 et seq., 83 N.E. 601; *May Coal Co. v. Robinette,* 120 Ohio St. 110, 165 N.E. 576. In fact, the action is considered so unrelated to the deceased as to be unaffected by a release given by him before death: *Phillips v. Community Traction Co.,* 46 Ohio App. 483, 189 N.E. 444. The independence of an action is itself ample justification for not barring a suit for wrongful death because of personal relationship between the deceased and the tort-feasor.

In Pennsylvania, where the right of action is deemed derivative, a suit for wrongful death is not barred because of the given relationship. While our Wrongful Death Act[1] does not contain the above-quoted words of the Ohio Statute, which were taken directly from Lord Campbell's Act (9 and 10 Vict., c. 93, Sec. 1), ". . . we, in common with most jurisdictions, have hitherto interpreted our statute as if worded in the same manner . . .": *Kaczorowski v. Kalkosinski,* 321 Pa. 438, 440, 184 A. 663. After noting in the *Kaczorowski* case that "We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action . . .", we immediately went on to

---

[1] Act of April 15, 1851, P. L. 669, Sec. 19, 12 PS §1601.

describe the source of the action as follows: "Its derivation . . . is from the tortious act and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor." Since suit for wrongful death is not barred because of personal relationship where the action is held to be derivative, *a fortiori*, it will not be so barred where the action is independent, as in Ohio, and we so hold.

The public policy which prevents a wife from suing her husband in tort has no relevancy to facts such as are here present: *Welch v. Davis*, 410 Ill. 130, 101 N.E. 2d 547. The oneness of spouses has been abolished and, with the death intervening, there is no longer family harmony to be conserved. Moreover, the policy of the Wrongful Death Statute would be unreasonably defeated by adoption of the interpretation contended for by the appellant. Unquestionably, a wrong has been done relatives of the wife who fall within the purview of the Act. No good reason exists why a late relationship between the deceased and the tort-feasor should bar the damaged third persons from recovery.

As to the appellant's contention that there is no evidence that the husband was driving the automobile at the time of the accident, there is evidence that he was the owner of the car. That fact affords a rebuttable presumption that he was the driver of the automobile at the time of the accident. The use of presumptions arising from the evidence is determined by the *lex fori*: Restatement, Conflict of Laws, § 595 (2). While there is no decision in this State directly in point, in *Limes v. Keller*, 365 Pa. 258, 260, 74 A. 2d 131, Mr. Justice Stern said ". . . there was enough circumstantial evidence [as to who was driving], *even apart from the rebuttable presumption that the owner of the automobile was oper-*

6

*ating it . . ."* (Emphasis supplied), and cited *Bastian
v. Baltimore & O. R. Co.,* 144 F. 2d 120 (C.C.A. 3).
In that case, the law of Pennsylvania on the question
of the presumption was a matter for the Federal Court's
ascertainment and application. It was there said (p.
123) that "It is the law of many States that an owner
is presumed to be in charge of and have control of his
property, even if that property be a vehicle." To this
was coupled a footnote containing a discussion of the
provision of The Vehicle Code (75 PS §739) that, in
proceedings for violations of the Code, the license plate
shall be prima facie evidence that the owner was at
the time operating the vehicle. The footnote continued,
—"We think that this statute is suggestive of what
a Pennsylvania court might hold were it necessary
to decide in a civil case who was the driver of a car
and no fact other than ownership of the vehicle was
presented." Justice STERN'S citation of the *Bastian*
case gave his dictum in the *Limes* case the weight of a
considered pronouncement on the Pennsylvania law
which we now follow.

The appellant's remaining contention on liability is
that the evidence was insufficient to carry the case to
the jury on the question of wilful or wanton misconduct
on the part of the driver. The Ohio Guest Statute (4A,
Page, Ohio General Code Annotated, Sec. 6308-6) im-
poses liability on the driver of a car for injury to a guest
passenger only where such injury is occasioned by the
driver's "wilful or wanton misconduct". It is agreed by
the parties to the action that Mrs. Staman, the plain-
tiff's deceased, was a guest within the contemplation of
the Ohio Statute in the car driven by her husband.

The only evidence concerning the accident is to be
found in the uncontradicted testimony of the one living
eyewitness, a driver of a truck into which the Staman
car crashed, and from the photograph of the scene

taken immediately after the accident which the plaintiff introduced in evidence. It is thus established that, on a rainy and misty day, the Staman car was being driven at a speed of 75 to 80 miles an hour, downhill, on a wet, brick-top road, 20 feet wide, into a curve at the bottom of the hill. For the 5½ miles along which the Staman car had travelled immediately prior to the accident, the road was "awful curvy". The berm was soft. The truck driver who was proceeding on the highway in direction opposite to the Stamans was also descending a hill toward the same curve at the bottom. As the Staman car at its excessively high speed entered the curve, its right wheels went off the roadway onto the berm. It immediately came back onto the road at a sharp angle, crossed over the center line and crashed into the left front of the truck which its driver was slowing down and pulling off the road toward the right-hand side.

The appellant bases his contention that the evidence was insufficient to go to the jury on the question of the driver's wilful or wanton misconduct on the grounds that there is no evidence as to the driver's state of mind and that, according to Ohio law, excessive speed alone is not evidence of the requisite misconduct.

As to the driver's state of mind, it has been held in Ohio that "Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of the danger, with indifference to consequences and with absence of all care": *Jenkins v. Sharp,* 140 Ohio St. 80, 83, 42 N.E. 2d 755. The requirement of culpable knowledge on the part of the driver is clear, but it is not necessary that such knowledge be actual or that it be established subjectively. It is sufficient to show ". . . circumstances tending to dis-

8

close that the motorist knows or *should know* that an injury to his guest will be the probable result of such conduct": *Tighe v. Diamond,* 149 Ohio St. 520, 527, 80 N.E. 2d 122 (Emphasis supplied). Thus, the required knowledge may be objectively proven. But, whether the driver's state of mind be proven subjectively or objectively, the jury tests his conduct by the standard of care of the reasonable man.

Whether evidence of excessive speed is efficient to prove wilful or wanton misconduct would seem to involve a question as to the sufficiency of the evidence to establish the point at issue which ordinarily is to be determined by the *lex fori*: Restatement, Conflict of Laws, § 595; cf. *Singer v. Messina,* 312 Pa. 129, 136, 167 A. 583. But, it has been so flatly ruled in Ohio under that State's Guest Statute that speed does not of itself prove wilful or wanton misconduct as to make that evidentiary ruling a condition of the substantive right. However that may be, the excessive speed of the driver of the automobile in the instant case takes on material significance when considered in connection with other attendant factors such as the sharp curve at the foot of the descending grade, the wet condition of the relatively narrow brick roadway, the presence of the truck descending the opposite hill to the same curve and the force with which the Staman car must have crashed into the truck as evidenced by the photograph. Under these conditions, it was for the jury to say whether the driver of the Staman car with "conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, . . . proceed[ed] into the presence of the danger, with indifference to consequences and with absence of all care." If he did, then he was guilty of wilful and wanton misconduct under the Ohio Statute: see *Jenkins v. Sharp,* supra.

The Ohio cases, which the appellant cites, where misconduct of automobile drivers seemingly more flagrant than that of the driver of the Staman car was held insufficient to go to the jury on the question of "wilful or wanton misconduct", furnish us no conclusive criterion of decision. Whether or not the evidence as a whole was sufficient to take the case to the jury on the indicated issue is to be determined by the *lex fori*: see § 595 of the Restatement and *Singer v. Messina,* supra. We think the question of liability, under all of the evidence, was properly for the jury.

The appellant asserts as trial error that the evidence of damage to the surviving children through the death of their mother was insufficient to support the quantum of the verdict for their benefit. The evidence shows that the mother was 39 years old and in good health at the time of the fatal accident. Her children were then 5½ and 3½ years old respectively. By a well-informed witness, it was established that the mother was devoted to her children and extremely attentive to their care. In the absence of countervailing proofs, such evidence justifies an inference by the jury that the mother was of customarily useful and helpful service to her children and that her death at a relatively early age inflicted a pecuniary loss on them in a substantial amount: cf. *Delaware etc. R. Co. v. Edward Jones,* 128 Pa. 308, 314-315, 18 A. 330 (1889), where it was expressly held that a husband was entitled to substantial damages for the wrongful death of his wife, who was 66 years old at the time of her fatal accident, without proof of special or unusual services. In *Gaydos v. Domabyl,* 301 Pa. 523, 152 A. 549, on the question of the loss to two minor children through the wrongful death of their mother, it was argued that ". . . the services of the mother was no more than a housekeeper. . . ." Mr. Justice KEPHART answered for this court as follows (p.

536),—"This is not the correct view. Their mother's services consisted of so many indefinable acts of tender solicitude, frugality, industry, usefulness and attention to her children which only a mother knows how and when to give. These services, in addition to managing the household, buying clothing and food, washing, cooking, and general care and supervision of the house, are certainly more valuable than those of a housekeeper or servant and therefore worth more. Her age, health, expectancy and diminishing power to serve, all these items are proper for the consideration of the jury." The appellant's contention in this connection is totally lacking in merit.

The appellant's final complaint is that the trial judge erred in permitting the jury to return two verdicts for the plaintiff, one for the benefit of the deceased's children and the other for reimbursement of the plaintiff for the funeral bill paid by him. The measure of damages is governed by the law of Ohio, the place of the tort: Restatement, Conflict of Laws, §412. Section 10509-168 of the Ohio General Code Annotated, cit. supra, provides that "In making such distribution [of the proceeds of a wrongful death action], the court may also consider funeral expenses and other items of expense incurred by reason of the death." That would seem to imply that such expenses are includible as elements of damage. Yet, the Ohio Court of Appeals has excluded funeral expenses as an item of damage in a wrongful death action: see *Gaus v. Pennsylvania Rd. Co.*, 56 Ohio App. 299, 10 N.E. 2d 635, 636; and *Sprung v. E. I. du Pont de Nemours & Co.*, 34 N.E. 2d 41, 53. However, we are not met with that question here.

In the procedural situation disclosed by the record, the *lex fori* affords the answer to the question of the funeral bill. The learned trial judge did not, as the ap-

pellant argues, submit the case on the theory of two separate causes of action but two separate elements of damage in the one cause. To that submission, the defendant did not except and, when specifically addressed by the trial judge at the conclusion of the charge as to whether he wished the court "to add or correct anything", counsel for the defendant answered "No, Your Honor." Thereafter the matter of the inclusion of the funeral bill as an item of damage was not raised by the defendant's motion for new trial, was not argued in the court below or considered in the opinion for the court en banc in refusing the motion for new trial. The first time the question was raised was in this court and that is too late for a matter of such nature: *Beckford v. Review Publishing & Printing Company*, 63 Pa. Superior Ct. 116, 117.

Judgments affirmed.

---

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

The accident which gave rise to the present case occurred in the State of Ohio. Dr. Paul Staman and his wife were driving in their automobile from a medical convention in Chicago to their home in Uniontown, Pennsylvania. While they were enroute through Ohio, their automobile collided with a truck, and both were instantly killed. The present suit is by the administrator of the wife's estate, on behalf of two surviving children, against the husband's executor.

Our Pennsylvania cases recognize the rule that the law of the state where the accident occurred governs the rights of the parties: *Mackey v. Robertson*, 328 Pa. 504, 506, 195 A. 870; *Foley, Executrix, v. The Pittsburgh-Des Moines Company*, 363 Pa. 1, 9, 68 A. 2d 517. As the law of the State of Ohio governs, it is for the

Pennsylvania courts to follow the law as pronounced in the sister state. It is conceded that the wife was a guest in the husband's car and that the Ohio Guest Statute (4A, Page, Ohio General Code Annotated, Sec. 6308-6) precludes recovery by her administrator *unless the husband was guilty of wilful and wanton misconduct.*

Under the Ohio cases, in my opinion, there was not sufficient evidence for submission to a jury of "wilful and wanton misconduct". It is for this reason that I dissent.

It is true, as said by the majority, that "Whether or not the evidence as a whole was sufficient to take the case to the jury on the indicated issue is to be determined by the *lex fori*". But this does not in any sense detract from the force of the rule that the forum must look to the *lex loci delicti* to determine the standard by which the actor's conduct is to be judged. The comment to the Restatement section cited by the majority (Conflict of Laws, sec. 595) reads in part as follows: "If, however, by the law of the place where the acts are done, the application of a standard of conduct has been narrowed, either by judicial decision or by statute, into a rule of law, the court at the forum will apply the rule so established to the facts as proved." It is indisputable, therefore, that Ohio case law governs the instant case.

The majority likewise recognizes that "The requirement of culpable knowledge on the part of the driver is clear . . .", and quotes a brief excerpt from *Tighe v. Diamond,* 149 Ohio St. 520, 527, 80 N. E. 2d 122. The full statement of the Ohio court was: " 'Wilful misconduct' on the part of a motorist, within the contemplation of guest statutes similar to the Ohio guest statute, is either the doing of an act with specific intent to injure his passenger, or, *with full knowledge of exist-*

*ing conditions,* the intentional execution of a wrongful course of conduct which he knows should not be carried out or the intentional failure to do something which he knows should be done in connection with his operation of the automobile, under circumstances tending to disclose that the motorist knows or should know that an injury to his guest will be the probable result of such conduct." (italics supplied) It is upon the question of whether or not this and numerous similar statements of the Ohio courts mean that the culpable knowledge must be *actual* knowledge of existing conditions that I differ with the majority. In the above-quoted case, there was evidence that the defendant driver "had full knowledge of the road conditions on the highway". The driver himself "testified that his objective was to take the girls over the hump and give them a thrill; and that he intended to go over it at a rate of speed which would throw the car up in the air somewhat." In the only other Ohio case cited by the majority (*Jenkins v. Sharp,* 140 Ohio St. 80, 42 N. E. 2d 755), the court found that "there is evidence . . . that a defendant in operating his automobile approaches a dangerous highway crossing, along which his view is obstructed, and, with conscious and timely knowledge of the existence of a stop signal [to which defendant himself testified], marking the intersecting highway as a main thoroughfare, drives on at a high and dangerous speed and in disregard of the injunction to stop. . . ." The instant case includes no direct evidence of any kind as to what the deceased driver actually knew.

In understanding the importance attached by the Ohio courts to "full knowledge of existing conditions", further excerpts from *Tighe v. Diamond,* supra, may be helpful: "As long as the element of inadvertence remains in conduct it is not wilful . . . . Negligence and wilfulness are mutually exclusive terms, implying radi-

cally different mental states. . . . 'Wilful misconduct' is something more than negligence. 'Wilful misconduct' imports a more positive mental condition prompting an act than does the term 'wanton misconduct.' 'Wilful misconduct' implies an intentional deviation from a clear duty or from a definite rule of conduct, a deliberate purpose not to discharge some duty necessary to safety, or purposely doing wrongful acts with knowledge or appreciation of the likelihood of resulting injury."

In the light of these pronouncements of the Ohio court, it is meaningless to speak of circumstances which disclose what a driver should have known unless it is proved that such driver had actual knowledge of those circumstances. Nevertheless, the majority opinion, while conceding that speed alone does not prove wilful and wanton misconduct, states that "the excessive speed of the driver of the automobile in the instant case takes on material significance when considered in connection with other attendant factors such as the sharp curve at the foot of the descending grade, the wet condition of the relatively narrow brick roadway, the presence of the truck descending the opposite hill to the same curve and the force with which the Staman car must have crashed into the truck as evidenced by the photograph." The force of the crash is obviously not an attendant circumstance at all but merely another way of saying that the relative speed of the two vehicles was very great. What evidence is there that the deceased driver had full knowledge of the other conditions mentioned? There is not a word in the record to indicate that he knew of "the sharp curve at the foot of the descending grade". There is not even a suggestion that he was aware of "the presence of the truck descending the opposite hill to the same curve". Indeed the very careful driver of the truck, who proceeded at the modest

speed of twenty-five miles per hour, said twice during the course of his testimony that he had the Staman car in view only a "very few seconds". He did not see it at all until "just after he made the curve." It is entirely possible that the deceased driver never saw the truck until the same moment, viz.: "after he made the curve". There is nothing in the record to negative such a possibility.

Therefore, this record establishes only that the deceased driver had knowledge of these circumstances: he was driving at an excessive rate of speed on a wet, slippery road down a slight grade. In my judgment, the Ohio courts have clearly decided that such driving it not wilful and wanton misconduct. Cf. *Schulz v. Fible*, 71 Ohio App. 353, 48 N. E. 2d 899; *Rupright v. Burns*, 52 O. L. A. 129, 82 N. E. 2d 330; *Helleren v. Dixon*, 152 Ohio St. 40, 86 N. E. 2d 777. It is axiomatic that our only function is to apply the law thus announced to the instant facts; we have no concern with the wisdom of the Ohio statute or the propriety of the decisions construing it.

For these reason, I would reverse the order of the learned court below and enter judgment for defendant *non obstante veredicto*.

Mr. Justice BELL joins in this dissent.