**CROLL v. JOHN HANCOCK MUT. LIFE INS. CO.**

No. 10633.

United States Court of Appeals Third Circuit.

Argued April 25, 1952.

Decided July 18, 1952.

"11. Have you ever had or been told that Answer
you had, or consulted or been treated 'Yes'
by a physician or other practitioner or
for any of the following: 'No'

"D. Pain in the chest, shortness of
breath, Coronary Artery Disease
or Angina Pectoris? No

"F. Stomach or Intestinal Trouble,
Indigestion, Ulcers, Appendicitis,
Gall Bladder or Liver Disorder,
Jaundice, Dysentery or Hernia? No

"12. Have you ever had any X-Ray, elec-
trocardiographic or blood examina-
tions or studies? No

"13. Have you, during the past five years,
consulted any physician or other prac-
titioner, or been confined to or treated
in any hospital, sanatorium, dispens-
ary, clinic or similar institution not
stated in answers to Questions 11 and
12? No

\* \* \* \* \* \* \* \* \*

"I certify that I am the person named as the pro-
posed Insured, that each of the foregoing statements
and answers is a statement of fact and not opinion,
that I have made and read each of them, and that
all such statements and answers are complete, true
and correctly recorded.

"Dated at Upper Darby, Pa.,
"Aug. 13, 1948 George J. Croll
"Signature of Proposed Insured.
"Witness: Willard E. Knowles, M.D."

M. E. Maurer, Philadelphia, Pa., for appellant.

Thomas Raeburn White, Philadelphia, Pa. (William H. Peace, II, Ira Jewell Williams, White, Williams & Scott, Philadelphia, Pa., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This is an action upon a life insurance policy commenced in the District Court for the Eastern District of Pennsylvania. On January 5, 1950, the insured died of a heart condition known as an acute coronary occlusion. The insurer defended on the ground that the insured had misrepresented the state of his health by giving false answers in the medical part of his application. The district court directed a verdict for plaintiff-beneficiary in the sum of $686.28, representing the amount of premiums paid by insured plus interest, and plaintiff has taken this appeal.

The insured made a written application for the policy on August 13, 1948. He was then 45 years of age. The application contained, *inter alia*, the following questions and answers:

The insured's physician was the principal witness; his testimony was for the most part buttressed by his office records. The physician testified that insured had consulted him 28 times during the five year period prior to the date of the written application. Twenty-one of these visits took place during the 7½ months before the application was signed. Even more important than the large number of visits is the fact that on numerous calls the insured complained of pains in the chest and other chest symptoms. Chest pain was accompanied by palpitations on one of these occasions. One of the entries in the physician's records indicates that insured staggered for several minutes, unable to support himself. On other visits the physician's records disclose that insured complained of stomach and intestinal distress. In January 1948, insured, suffering from acute chest pains and shortness of breath, summoned the physician to his home, where the latter administered morphine. Shortly thereafter, the insured, upon advice of the physician, had an electrocardiogram taken at the heart station of the Bryn Mawr Hospital. The very day before insured

made his insurance application he visited his physician. The entry in the doctor's office records is as follows: "8/12/48. Pain 4½ days incl.—lumbar pains in back —epigastric and back pains are eased by sitting up straight (not completely eased)." The physician's records as well as the electrocardiogram indicate a tentative diagnosis of coronary occlusion.

■ The issue before us is whether the district court was correct in taking the case away from the jury. Since federal jurisdiction is based on diversity of citizenship, we apply the law of Pennsylvania. The record is unclear as to whether the insurance policy is a Pennsylvania contract or a Massachusetts contract. Such a determination, however, is not essential to the decision in this case for, regardless of where the contract was made, Pennsylvania courts apply the law of the forum in determining when an issue such as fraud should be submitted to the jury. See Singer v. Messina, 1933, 312 Pa. 129, 167 A. 583, 89 A.L.R. 1271; Sudol v. Gorga, 1943, 346 Pa. 463, 31 A.2d 119; Restatement, Conflict of Laws, §§ 594, 595. The Pennsylvania rule is binding on us in this case. Stoner v. New York Life Ins. Co., 1940, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284.

■■ Questions about prior medical attendance are material to the risk and false answers permit an avoidance of the policy. Derr v. Mutual Life Ins. Co. of New York, 1945, 351 Pa. 554, 41 A.2d 542. The applicable law of Pennsylvania is fully set forth in Evans v. Penn. Mutual Life Ins. Co. of Philadelphia, 1936, 322 Pa. 547, 186 A. 133, 139,[1] where the court declared: "Where it affirmatively appears, from sufficient documentary evidence, that the policy was issued in reliance on false and fraudulent statements, made by or on behalf of the insured, as where false answers are shown to have been given by insured under such circumstances that he must have been aware of their falsity, the court may direct a verdict or enter judgment for the insurer." See also Freedman v. Mutual Life Ins. Co. of New York, 1941, 342 Pa. 404, 21 A.2d 81, 135 A.L.R. 1249.

■ When the above statement of Pennsylvania law is applied to the fact situation here, it becomes abundantly clear that the trial court properly directed a verdict for defendant. With the documentary evidence uncontradicted, the district court necessarily concluded that this was not a case in which an applicant may have honestly given wrong answers. This was not an instance in which an applicant may have overlooked comparatively minor illnesses. Cf. Livingood v. New York Life Ins. Co., 1926, 287 Pa. 128, 132, 134 A. 474, 476. No juror should be asked to believe that decedent at the time he made his application may have forgotten his chest pains or the electrocardiogram taken in the hospital or the many visits to his physician during a relatively short period

1. Both parties cite this case in support of their positions. The insured there answered "no" to questions relating to health and medical or surgical treatment. Unlike the instant case, none of the questions in the application related to symptoms of the specific disease which caused the death. In the Evans case plaintiff-beneficiary admitted that one of the insured's vertebrae would sometimes get out of its rigid position in the spinal column, but that this was promptly restored by osteopathic treatment and massage. In the opinion of one physician who testified, death of the insured was caused by a dislocated vertebra. The defendant called two doctors, both osteopaths, who testified that they treated the insured for dislocations prior to the allegedly fatal one. A third physician asserted he treated insured for bursitis (which was reported in the application) and for a bronchial inflammation. Otherwise he considered the insured perfectly normal. The Supreme Court of Pennsylvania held that the issue of fraud was properly submitted to the jury. That Court concluded that nothing in the documentary evidence revealed that insured thought or had reason to think that the dislocations he suffered were more than slight or temporary indispositions, too trivial to be reported. We have no doubt that the Court was influenced by the fact that insured was only 21 years of age when the application was made and suffered from no disease or illness generally considered to be a serious one.

of time.[2] Appellant stresses the fact that decedent may not have known of his heart condition. The most uneducated and unsuspecting person, however, is as keenly aware as anyone of pains in the chest, shortness of breath, and stomach and intestinal distress.[3]

 In an effort to sustain her position that the question of fraud was one for the jury, plaintiff contends that the documentary evidence is inadmissible. We see no merit in this point. The doctor's office records as well as the electrocardiogram were properly admitted into evidence under both the Federal Business Records Act, 28 U.S. C. § 1732,[4] and the Pennsylvania statute.[5] See Freedman v. Mutual Life Ins. Co., supra, 342 Pa. 404, at 21 A.2d 85–87. The physician's office records are not rendered inadmissible merely because, in some instances, the physician may have delayed for as long as two weeks in transcribing his notes from his daily records to his office records.

For the above reasons, the judgment of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

The premise of the majority's position is that the testimony, oral and documentary, established that the decedent must have known of his heart condition when he signed the application for insurance and that accordingly the District Court properly directed a verdict for defendant.

I disagree. The questions resolved by the District Court should have been submitted to a jury.

The Pennsylvania decisions so hold. In doing so they enunciate these legal principles:

Plaintiff makes out a prima facie case on proving the contract of insurance and payment of premiums to the time of death. In order to avoid the policy the burden then shifts to the insurance company to prove that the representations in the application were false and that the insured knew they were false when he made them or otherwise acted in bad faith in making them. Evans v. Penn Mutual Life Insurance Company, 1936, 322 Pa. 547, 560, 186 A. 133. *"Where there is a conflict in the evidence either as to the falsity of the representations or as to the knowledge or bad faith of the insured the case must be submitted to the jury"*. Burton v. Pacific Mut. Life Ins. Co., 1951, 368 Pa. 613, 615, 84 A.2d 310, 312, (emphasis supplied); Adams v. Metropolitan Life Insurance Company, 1936, 322 Pa. 564, 186 A. 144, 145.

Since the majority in its opinion did not discuss what I deem to be critical evidence to which these principles apply, it becomes necessary to do so here.

The decedent operated a busy gasoline service station. In the conduct of his busi-

2. See Derr v. Mutual Life Ins. Co. of New York, 1945, 351 Pa. 554, 41 A.2d 542; Glaser v. Metropolitan Life Ins. Co., 1940, 189 Pa.Super. 261, 11 A.2d 558; Prevete v. Metropolitan Life Ins. Co., 1941, 343 Pa. 365, 22 A.2d 691.

3. Adams v. Metropolitan Life Ins. Co., 1936, 322 Pa. 564, 186 A. 144, upon which plaintiff relies, is distinguishable. There was no documentary evidence in that case proving that the insured had made false and fraudulent statements.

4. "Record made in regular course of business.
"In any court of the United States * * *, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter." 28 U. S.C. § 1732.

5. "Business records.
"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission." Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 Purdon's Pa.Stat.Annot. § 91b.

ness he engaged in taxing physical labor. He not only sold gasoline and oil, but he lubricated cars and changed tires. The latter involved considerable physical labor; automobiles had to be jacked-up, heavy tires and tire wheels had to be removed, carried away and replaced. At times decedent was required to move heavy drums of alcohol in servicing automobile radiators for cold weather. The decedent's physician knew that he was engaged in these strenuous tasks,[1] but he never cautioned him that he should refrain from engaging in them or that they were dangerous to him. *He never advised the decedent that he was suffering from heart disease or any serious illness.* On several occasions the physician told decedent that the pains and distress he was suffering were due to digestive disturbances and cautioned him against "worrying". During the period of decedent's treatment (March 27 to May 21, 1948) the physician gave him a number of injections to stimulate his flagging libido.

This significant evidence as to the failure of the physician to advise the decedent of his heart condition; his statement to him that he was merely suffering from a digestive disturbance; the absence of warning by the physician to the decedent to refrain from taxing physical work and the injections of testosterone to stimulate his libido made the question of the decedent's good faith one for the jury. It might well have convinced a jury that the decedent was unaware of any serious illness and that he acted in good faith in so stating in his application for insurance.

Almost a parallel situation was presented in Adams v. Metropolitan Life Insurance Company, supra. There decedent stated in her application for insurance that her health was good; that she had had no physical or mental defect or infirmity and that her last illness had occurred four months ago, when she was confined to a hospital for ten days for the removal of a hemorrhoid. In answer to the question as to whether she had been attended by a physician during the preceding five years and if so to give the details of any illness and the

names of physicians, she listed only the hemorrhoid operation. The testimony elicited that the decedent had been treated by her physician for a diseased kidney condition fifteen times during a three month period prior to her application, and a number of other times within the preceding four years. However, as in the instant case, the physician testified that he " * * * had 'persistently concealed the true facts of her case throughout her illness * * *.'" That testimony, the Supreme Court held, made it a question " * * * for the jury to say whether or not the requisite bad faith was shown", and that in view of it " * * * the jury might very well conclude that there had been no fraudulent concealment by insured of any 'grave, important or serious disease' ".

Likewise in Travellers Insurance Company v. Heppenstall Company, 1948, 360 Pa. 433, 61 A.2d 809, although electrocardiograms led to a diagnosis of "possible coronary" the decedent's physician did not disclose that fact to him. While decedent had disclosed in his application that x-rays and electrocardiograms had been taken, he answered "no" in response to the question as to whether he had suffered from "disease of the heart". The Supreme Court, in a declaratory judgment proceeding instituted by the insurance company, affirmed the ruling of the lower court that the question of the insured's good faith was for the jury. In doing so, the Court stated 360 Pa. at pages 436, 437, 61 A.2d at page 811: "It is, of course, well established that, in order to avoid a policy on the ground of alleged fraudulent representations, the insurer must show, not only that the statements were false, but that the insured knew they were false or otherwise acted in bad faith in making them".

In Burton v. Pacific Mutual Life Insurance Company, supra, the decedent was also kept in ignorance of his illness by his physician. There, decedent was operated on for the removal of adenoids and tonsils. During the course of the operation the surgeon in charge noticed a growth at the base of the tongue which laboratory reports

---

1. The physician was one of decedent's service station customers.

later showed to be cancerous. A series of x-ray treatments were given decedent for nine months. Some six months later, decedent was taken to the hospital following a hemorrhage of the throat. He died of cancer of the throat.

In his application, made about six weeks before entering the hospital, the decedent stated that he was in good health and the only physicians he had consulted in the past five years had been in reference to the tonsilectomy. Three doctors who had treated the decedent testified that they had never told him he was suffering from cancer and that in their opinion he did not know he had the disease.

The Supreme Court held that the mere fact that the decedent had undergone a long course of x-ray treatments was not sufficient to infer knowledge on his part that he was suffering from a serious illness and affirmed a jury verdict in favor of the beneficiary.

Finally, in the Evans case, supra, decedent had stated in his application that he had never had any disease or infirmity; nor been "disabled or had any medical or surgical treatment". The testimony at the trial was to the effect that the decedent had for five or six years prior to date of application, suffered dislocation of a vertebra near the base of the brain, that he had thereafter had several similar dislocations, that he had been treated during the five year period by three doctors for the various dislocations, and that he died of a cerebral hemorrhage three months after his application for insurance. The Supreme Court affirmed a jury verdict for decedent's beneficiary, holding, 322 Pa. at page 554, 186 A. at page 138 "When the applicant states he is in good health and believes it to be so, though in fact he is suffering from some insidious disorder or latent disease of which he is not aware, a recovery may be had" and, 322 Pa. at page 555, 186 A. at page 139, "In any event, the controlling factor is the good faith of the insured, and the burden of showing fraud is on the insurer, who asserts it."

Under the facts in this case and the applicable principles above stated, I would reverse.